[Cite as *State v. Pryor*, 2017-Ohio-8935.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 1-17-20

    v.

JEREMY L. PRYOR,                     O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2016 0467

Judgment Affirmed

Date of Decision: December 11, 2017

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *Jana E. Emerick* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Jeremy Pryor ("Pryor"), brings this appeal from the April 13, 2017, judgment of the Allen County Common Pleas Court sentencing Pryor to an aggregate 10-year prison term after he was convicted by a jury of two counts of Complicity to Felonious Assault in violation of R.C. 2903.11(A)(2), both felonies of the second degree and both containing firearm specifications pursuant to R.C. 2941.145(A), one count of Complicity to Aggravated Robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree, also containing a firearm specification pursuant to R.C. 2941.145(A), and one count of Carrying a Concealed Weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree. On appeal, Pryor argues that his convictions were not supported by sufficient evidence, that the convictions were against the manifest weight of the evidence, that he received ineffective assistance of counsel, that the trial court failed to properly instruct the jury, that the trial court erred by failing to merge certain counts for the purposes of sentencing, and that the trial court erred in imposing consecutive sentences.

*Procedural History*

{¶2} On December 15, 2016, Pryor was indicted for two counts of Felonious Assault in violation of R.C. 2903.11(A)(2), both felonies of the second degree and both containing firearm specifications, two counts of Aggravated Robbery in

-2-

violation of R.C. 2911.01(A)(1), both felonies of the first degree and both containing firearm specifications, and one count of Carrying a Concealed Weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree. Pryor pled not guilty to the charges.

{¶3} On February 7-8, 2017, Pryor's case proceeded to a jury trial. Just prior to the beginning of the trial, the State dismissed one of the Aggravated Robbery counts against Pryor. The trial proceeded on the remaining counts, with the State calling 10 witnesses and entering multiple exhibits into evidence including surveillance video of the incident. The State argued that Pryor was guilty of the Felonious Assaults and the Aggravated Robbery under a Complicity theory for either soliciting or aiding and abetting Brandon Bolden in committing the offenses. Pryor then presented his case-in-chief, testifying on his own behalf as the sole witness for the defense. Ultimately the jury found Pryor guilty of all four of the remaining counts against him.

{¶4} On April 13, 2017, a sentencing hearing was held. Pryor was ordered to serve 2 years in prison on each of the Felonious Assault convictions, consecutive to each other, and 3 years in prison on each of the firearm specifications, consecutive to each other, and consecutive to the prison terms from the Felonious Assault convictions. Pryor was also ordered to serve 3 years in prison on the Aggravated Robbery conviction and 12 months in prison on the Carrying a Concealed Weapon

conviction; however, both of those prison terms were ordered to be served concurrent to the remaining charges. A judgment entry memorializing Pryor's sentence was filed the same day of the sentencing hearing.

{¶5} It is from this judgment that Pryor appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The conviction for Carrying a Concealed Weapon was not supported by sufficient evidence.**

**Assignment of Error No. 2**
**The conviction for Carrying a Concealed Weapon was against the manifest weight of the evidence.**

**Assignment of Error No. 3**
**The Trial Court erred and denied to Mr. Pryor his right to a fair trial by jury by not properly instructing the jury as to complicity.**

**Assignment of Error No. 4**
**The complicity convictions were not supported by sufficient evidence.**

**Assignment of Error No. 5**
**The complicity convictions were against the manifest weight of the evidence.**

**Assignment of Error No. 6**
**Mr. Pryor was denied the effective assistance of counsel.**

**Assignment of Error No. 7**
**The trial Court erred in denying the defense motion to merge Counts I and II with Count III.**

**Assignment of Error No. 8**
**The Trial Court erred in imposing consecutive sentences as to Counts I and II.**

{¶6} We elect to address some of the assignments of error together, and out of the order in which they were raised.

*First, Second, Fourth, and Fifth Assignments of Error*

{¶7} In his first and fourth assignments of error, Pryor argues that there was insufficient evidence presented to convict him of both counts of Complicity to Felonious Assault, of Complicity to Aggravated Robbery, and of Carrying a Concealed Weapon. In his second and fifth assignments of error, Pryor argues that even if his convictions were supported by sufficient evidence, they were against the manifest weight of the evidence.

Standard of Review

{¶8} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id*. When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶9} By contrast, in reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines

the conflicting testimony. *Thompkins* at 387. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*. Furthermore, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *Thompkins* at paragraph 4 of the syllabus, citing Ohio Constitution, Article IV, Section 3(B)(3).

Trial Testimony

{¶10} At trial, the State presented the testimony of Javionte Gilcrease and Devante Neal who were shot in the early afternoon hours of January 1, 2016, as they were walking home from a nearby gas station. Gilcrease and Neal had gone to the gas station to purchase tobacco products.

{¶11} Three men—Pryor, Brandon Bolden, and Alundrous Sanders—left the gas station together on foot shortly before Gilcrease and Neal. Gilcrease testified that as he and Neal were coming up behind the three men, the three men slowed down. Gilcrease indicated that he saw Pryor—whom he did not know at the time but identified at trial—hand a gun to a man later identified as Brandon Bolden. Bolden then immediately approached Gilcrease and Neal, pointed the gun at them,

and told them to empty their pockets. Gilcrease told Bolden he did not have anything, and Bolden said "Do you think I'm playing?" and then shot Gilcrease in the leg. (Feb. 7, 2017, Tr. at 161).

{¶12} When Bolden shot Gilcrease, Neal started to run in the opposite direction. Bolden fired several shots at Neal, striking him in the leg as well. Neal was able to make it to a nearby residence to get help.

{¶13} While Gilcrease was on the ground after being shot in the leg, Bolden stepped over him and took his cell phone, then ran off. Pryor and Sanders had started to run toward Sanders's residence when Bolden began shooting. Gilcrease and Neal were both taken to the hospital and treated for their injuries.

{¶14} Officers responded to the area and learned from a witness on the street that three black males had been observed running from the scene to a house at 821 Madison in Lima, which was approximately two blocks from the gas station. Officers were let into the residence by the owner, Kimberly Van Meter. When the officers entered the residence, Pryor was coming upstairs from the basement. Pryor was detained at that time and as officers checked the basement they found a handgun in plain view partially hidden under a rock. The handgun was loaded, had a round in the chamber and seven bullets in the magazine. Officers noticed that there were muddy boot prints that led from the basement where the gun was found to the chair where police had Pryor take a seat. Pryor was wearing muddy shoes at the time.

{¶15} Officers located seven spent shell casings from the scene of the shooting. BCI determined that the casings had been fired from the gun that had been located in the basement of 821 Madison. Further testing revealed the handgun's serial number, which had been scratched off on the surface. The serial number was then checked and it was learned that Pryor was the registered owner of the firearm, having purchased it from MC Sports in Lima in May of 2015.

{¶16} Bolden, the shooter, was located in the alley behind the residence at 821 Madison. After he was detained, Gilcrease's cell phone was found in Bolden's pocket.

{¶17} Surveillance footage from the gas station was entered into evidence and played for the jury. It showed Bolden, Pryor and Sanders walking to the gas station, going inside, and then making a purchase. From the interior surveillance video a Lima Police detective was able to readily identify Pryor and Bolden from prior dealings. After the business at the gas station was complete, the three spoke with a man outside for a short time, then began walking off.

{¶18} The surveillance footage showed Gilcrease and Neal walk up to the gas station, then exit the gas station. It then showed Gilcrease and Neal walking in the same direction as Bolden, Pryor and Sanders. It also showed Pryor moving close to Bolden shortly before Bolden approached Gilcrease and Neal. Pryor handing Bolden a gun cannot clearly be seen in the video due to the distance from the

surveillance camera, but the two were momentarily close together and Gilcrease testified that he saw Pryor give Bolden the handgun that was used in the shooting. Gilcrease identified the moment on the video where he saw the transfer.

{¶19} After the State rested its case, Pryor took the stand in his own defense. Pryor testified that he had originally purchased the firearm in question but the firearm went missing sometime in late 2015 prior to the shooting. Pryor testified that he did not give the gun to Bolden, that he did not in any manner support or encourage Bolden to commit a robbery, let alone shoot anyone, and that when Bolden started shooting he started running.

Sufficiency of the Evidence

{¶20} On appeal, in his first and fourth assignments of error, Pryor argues that the State presented insufficient evidence to convict him of Complicity to Felonious Assault of both Gilcrease and Neal, that the State presented insufficient evidence to convict him of Complicity to Aggravated Robbery of Gilcrease, and that the State presented insufficient evidence to convict him of Carrying a Concealed Weapon.

{¶21} As argued in this case, Complicity is codified in R.C. 2923.03, which reads,

> **(A)  No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:**
>
> **(1)   Solicit or procure another to commit the offense;**

**(2)   Aid or abet another in committing the offense[.]**

{¶22} In *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, the Supreme Court of Ohio further defined what "complicity by aiding and abetting" means in the context of R.C. 2923.03(A)(2), holding that:  "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.  Such intent may be inferred from the circumstances surrounding the crime."  *Johnson* at syllabus.

{¶23} Pryor was convicted of two counts of Complicity to Felonious Assault in violation of R.C. 2903.11(A)(2), one count for Gilcrease and one count for Neal. Felonious Assault pursuant to R.C. 2903.11(A)(2) reads, "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶24} Pryor was also convicted of Complicity to Aggravated Robbery in violation of R.C. 2911.01(A)(1), which reads, "No person, in attempting or committing a theft offense * * * shall * * * "[h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

-10-

{¶25} Finally, Pryor was convicted of Carrying a Concealed Weapons in violation of R.C. 2923.12(A)(2), which reads, "No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand * * * [a] handgun other than a dangerous ordnance[.]"

{¶26} With regard to both of his convictions for Complicity to Felonious Assault and his conviction for Complicity to Aggravated Robbery, Pryor argues in his fourth assignment of error that the State did not present any evidence, let alone sufficient evidence, establishing that Pryor had the same "kind of culpability required for the commission of the offense[s]" as the principal offender. He contends that there was no evidence of any agreement between Pryor and Bolden as to what Bolden would do with the gun. He does not contest that Bolden committed both Felonious Assaults or an Aggravated Robbery; rather, he contests his Complicity to those crimes.

{¶27} Contrary to Pryor's arguments, the State presented the testimony of Gilcrease who indicated that immediately before Bolden approached him, Gilcrease saw Pryor give Bolden a gun. Gilcrease testified that the action made him concerned for his safety and that Bolden then walked over to Gilcrease and told him to empty his pockets.

{¶28} The surveillance video corroborates Gilcrease's version of events, at least to an extent, as it shows Pryor congregating near Bolden just before the robbery

-11-

where Pryor could have passed Bolden the gun. Pryor and Bolden are too far from the camera to see an actual gun being exchanged, but that is what Gilcrease testified that he witnessed. Given the timing of the events, the jury could readily infer that Pryor was assisting, supporting, encouraging or inciting Bolden to commit an Aggravated Robbery and the Felonious Assaults when Pryor was providing Bolden with the gun just as Gilcrease and Neal approached.

{¶29} This is particularly true given that after the shooting in question, the jury could infer that Pryor attempted to hide the gun from the incident in the basement of 821 Madison, which Bolden would have had to give back to him in order to do so. Because the State presented evidence from which Pryor's culpability could be reasonably inferred, we cannot find that the State presented insufficient evidence regarding the Complicity convictions. Thus Pryor's fourth assignment of error is overruled.

{¶30} With regard to Pryor's conviction for Carrying a Concealed Weapon, Pryor contends in his first assignment of error that no witnesses testified that the handgun was concealed and that it was error to allow the charge to proceed to a jury where the only evidence was an inability to see a weapon on Pryor in the "grainy" surveillance video.

{¶31} Notably, Pryor was identified on the gas station surveillance video, including the interior gas station video. The interior video shows both the front and

back of Pryor from a relatively close distance and a handgun cannot be seen. Combining this with Gilcrease's testimony that Pryor handed Bolden the handgun, we cannot find that the State presented insufficient evidence to convict Bolden of Carrying a Concealed Weapon. Pryor's first assignment of error is therefore overruled.

### Manifest Weight

**{¶32}** Pryor next argues in his second and fifth assignments of error that even if there was sufficient evidence presented to support his convictions, his convictions were against the manifest weight of the evidence. Pryor argues that for the same reasons that he contended that the State presented insufficient evidence to convict him, his convictions were against the manifest weight of the evidence. We disagree.

**{¶33}** Although Pryor took the stand in his own defense to deny the allegations presented by the State, the jury was free to find his denials not to be credible. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass,* 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. In other words, "jurors are entitled to believe the testimony offered by the State's witnesses." *State v. Wareham,* 3d Dist. Crawford No. 3–12–11, 2013–Ohio–3191, ¶ 25, citing *State v. Bates,* 12th Dist. Butler No. CA2009–06–174, 2010–Ohio–1723, ¶ 11.

{¶34} In this case, Pryor's testimony seemed particularly suspect given that he claimed to have lost the weapon that he purchased from MC Sports, which was the same weapon Gilcrease indicated that Pryor gave to Bolden just before the shootings, and the same weapon a jury could infer Pryor was hiding in the basement of the residence at 821 Madison.

{¶35} The jury was provided with the testimony of the two victims, Gilcrease and Neal, the investigating officers, and video surveillance of the incident. Based on the evidence that was presented, we cannot find that the jury clearly lost its way in convicting Pryor of two counts of Complicity to Felonious Assault, Complicity to Aggravated Robbery, and Carrying a Concealed Weapon, or that the jury created a manifest miscarriage of justice. Therefore, Pryor's second and fifth assignments of error are overruled.

*Third Assignment of Error*

{¶36} In Pryor's third assignment of error, having failed to enter any objection at trial, he argues that the trial court committed plain error by failing to properly instruct the jury as to "Complicity."

Standard of Review

{¶37} Generally, " '[w]hen reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts

and circumstances of the case.' " *State v. Leasure,* 4th Dist. Ross No. 15CA3484, 2015–Ohio–5327, ¶ 49, quoting *State v. Ellis,* 5th Dist. Fairfield No. 02 CA 96, 2004–Ohio–610, ¶ 19; *see also State v. Wolons,* 44 Ohio St.3d 64, 68 (1989). However, "a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A).

{¶38} The Supreme Court of Ohio has repeatedly held that a failure to object before the jury retires in accordance with this provision, absent plain error, constitutes a waiver. *State v. Williford*, 49 Ohio St.3d 247, 251 (1990), citing *State v. Underwood*, 3 Ohio St.3d 12 (1983). To have plain error under Crim.R. 52(B), the error must be an "obvious" defect in the trial proceedings that affected the defendant's "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Plain error is to be used " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Id.* quoting *State v. Barnes*, 94 Ohio St.3d 21, 28, 2002-Ohio-68. Further, plain error only exists where "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros,* 78 Ohio St.3d 426, 431 (1997).

{¶39} Finally, we note that when reviewing jury instructions, courts have held that they are to "be considered as a whole and not merely by examining isolated

portions thereof." *State v. Williams*, 10th Dist. Franklin No. 90AP-638, 75 Ohio App.3d 102, 116 (1991) citing *State v. Price*, 60 Ohio St.2d 136 (1979); *State v. Dues*, 8th Dist. Cuyahoga No. 100861, 2014-Ohio-5276, ¶ 39 ("jury instructions are to be viewed as a whole to determine whether they contain prejudicial error."). " 'Instructions that in their totality are sufficiently clear to permit the jury to understand the relevant law will not be the cause of a reversal upon appeal.' " " *State v. Thiel*, 3d Dist. Wyandot No. 16-16-01, 2017-Ohio-242, ¶ 135, quoting *Schnipke v. Safe–Turf Installation Group, L.L.C.*, 3d Dist. Allen No. 1-10-07, 2010–Ohio–4173, ¶ 30, citing *Burns v. Prudential Secs., Inc.*, 3d Dist. Marion No. 9-03-49, 2006–Ohio–3550, ¶ 41.

**{¶40}** In this case, Pryor argues that the jury was inadequately instructed as to Complicity.[1]  In pertinent part, the trial court instructed the jury as follows.

> **On Counts One, Two, and Three, the State has charged the defendant under a theory that the defendant was complicit with another person in the offenses in those counts.  A charge of complicity may be stated in terms of being an accomplice with another in an offense or in terms of the principal offense.**
>
> **Before you can find the defendant guilty of complicity in any crime you must find beyond a reasonable doubt that on or about the stated date, and in Allen County, Ohio, the defendant either knowingly solicited or procured another to commit the offense in the particular count of the indictment, or knowingly aided or abetted another in committing the offense.**

---

[1] The statutory elements of Complicity have been cited previously in this opinion.

**Now, the defendant cannot be found guilty of complicity unless the offense was actually committed.**

**Solicit means to seek, to ask, to influence, to invite, to tempt, to lead on, or to bring pressure to bear.**

**Procure means to get, obtain, induce, bring about, or motivate.**

**Aided or abetted. Before you can find the defendant guilty of complicity by aiding and abetting *you must find beyond a reasonable doubt that the defendant shared the criminal intent of the principal offender*. Such intent may be inferred from the circumstances surrounding the offense including, but not limited to, presence, companionship, and conduct before and after the offense was committed. The mere presence of the defendant at the scene of the offense is not sufficient to prove, in and of itself, that the defendant was an aider and abettor.**

**The charges set forth in each count constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately and you must state your finding as to each count uninfluenced by your verdict as to any other count. The defendant may be found guilty or not guilty of any one or all of the offenses charged.**

**Remember, although the charges in Counts One, Two, and Three of the indictment are stated in terms of defendant committing the principal offenses therein, he is being tried as an alleged accomplice with another person, Brandon Bolden, in the commission of those offenses.**

(Emphasis added.) (Feb. 8, 2017, Tr. at 391-393).

**{¶41}** After covering Complicity in its instructions, the trial court then provided instructions on the first two counts, both Felonious Assaults, including the requisite mental culpability, knowingly. In both instances the trial court reiterated that the State had to prove beyond a reasonable doubt that Pryor "solicited, procured,

or aided or abetted another in the commission of the Felonious Assault." (*Id.* at 396). Next the trial court instructed the jury on Aggravated Robbery, including the applicable mental state. It was similarly reiterated that Pryor was being charged with Complicity.

{**¶42**} When reviewing the jury instructions in this case, we cannot find that plain error existed here. The jury was clearly instructed as to what it had to find regarding each count of complicity and what elements it had to find regarding the principal offense. Pryor may argue on appeal that the instructions were somehow inadequate, but the requisite instructions were given. Pryor seems to contend that the trial court should have repeated the aided and abetted language regarding sharing the intent of the principal offender each time complicity is later mentioned in the instructions. Even assuming *arguendo* that this was true, the jury instructions as a whole do not demonstrate any inadequacy and they certainly could not rise to the level of plain error in this case.[2] Thus Pryor's third assignment of error is overruled.

*Sixth Assignment of Error*

{**¶43**} In Pryor's sixth assignment of error, he argues that he was denied the effective assistance of counsel. Specifically, he contends that his trial counsel was ineffective for failing to call Brandon Bolden, the principal actor, as a witness in

---

[2] Notably the trial court went over *every page* of the jury instructions *individually* with the prosecution and the defense prior to instructing the jury. The defense raised no objections to anything regarding the mental culpability related to the Complicity counts.

this case and that his counsel was ineffective for failing to make sure that the jury was properly instructed regarding complicity in this case as he argued in the third assignment of error.

## Standard of Review

**{¶44}** To establish an ineffective assistance of counsel claim, Pryor must show that his trial counsel's performance was deficient and that counsel's performance prejudiced him. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

## Analysis

**{¶45}** At the outset, we have already determined in our third assignment of error that no prejudicial error existed regarding the jury instructions in this case, thus Pryor's ineffective assistance claim related to that issue is not well-taken.

**{¶46}** Turning then to Pryor's remaining argument, Pryor claims that his trial counsel was ineffective for failing to call Brandon Bolden as a witness at trial. Pryor bases his argument on a "letter" that Pryor produced at the sentencing hearing in

this case. The "letter" is a handwritten, unsigned, unsworn statement that Pryor contended was drafted by Brandon Bolden. The "letter" stated as follows.

> **This what I gave my lawyer John I only know how to say this one way and that's the truthful way Devante kept shooting at me and my friend Aaron bullets a [sic] be whistling past our head's [sic] it got to the point every where [sic] I went he would pop up out of no where [sic] and start shooting at me I use [sic] to run because I had no gun I got tired of running John I got tired so I bought me a gun to prepare myself and I had no intention of running into him that day it just happened we leaving the store finna [sic] turn in the alley I hear somebody say run yo pocket's [sic] I turn to see who said it when I turn I see Devante with a gun I seen thru [sic] the barrel he ain't have one in the head that's when I started shooting that's when the other 2 guys ran they didn't have no involvement in it that's why they ran.**

(Apr. 13, 2017, Hr., Def.'s Ex. A).

{¶47} Pryor presented this "letter" at his sentencing hearing claiming that he wanted to have a new trial based on this "new" evidence, even though the letter was dated prior to his trial. Pryor's attorney stated that he had never seen the letter before, though he was advised that it existed and he asked family members multiple times to produce it but they never did. Pryor's attorney also stated that he had spoken with Bolden's attorney multiple times regarding whether Bolden would testify in this case, and Bolden said he would not testify and that if he was called he would invoke his Fifth Amendment right because he was making an appeal in his own criminal case from these issues.

{¶48} As the letter cannot remotely be authenticated—it is unsigned, not notarized, and could literally have been written by anyone—and as Pryor's trial counsel had multiple reasons for not calling Bolden as a witness, including a distinct possibility that Bolden might corroborate the State's witnesses regarding the firearm in some fashion, we cannot find that trial counsel was ineffective. This is particularly true given that we have no way of knowing what, if anything, Bolden's testimony would have been. Pryor's argument is thus not well-taken, and his sixth assignment of error is overruled.

*Seventh Assignment of Error*

{¶49} In Pryor's seventh assignment of error, he argues that the trial court erred by failing to merge the two Felonious Assault convictions with the Aggravated Robbery conviction. Pryor essentially contends that the act of delivering the handgun to Bolden completed his involvement in the Felonious Assaults and the Aggravated Robbery, and that this single act should have resulted in a merger of the Felonious Assaults with the Aggravated Robbery.

Standard of Review

{¶50} Revised Code 2941.25, Ohio's multiple-count statute, governs allied offenses, and states as follows.

> **(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.**

**(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.**

{¶51} In *State v. Ruff,* 143 Ohio St.3d 114, 2015–Ohio–995, the Supreme Court of Ohio provided Ohio courts with the following guidelines as to how to interpret R.C. 2941.25.

**As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?** *An affirmative answer to any of the above will permit separate convictions.* **The conduct, the animus, and the import must all be considered.**

(Emphasis added.) *Ruff* at ¶ 31. The Supreme Court of Ohio further held in *Ruff* that "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 26.

{¶52} Whether offenses are allied offenses of similar import is a question of law that this Court reviews *de novo. State v. Badertscher,* 3d Dist. Putnam No. 1214–06, 2015–Ohio–927, ¶ 21, citing *State v. Stall,* 3d Dist. Crawford No. 3–10–

Case No. 1-17-20

12, 2011–Ohio–5733, ¶ 15, citing *State v. Brown,* 3d Dist. Allen No. 1–10–31, 2011–Ohio–1461, ¶ 36.

Analysis

**{¶53}** In this case, Pryor argued at the sentencing hearing that his Felonious Assault convictions should merge with the Aggravated Robbery conviction. The trial court directly addressed Pryor's merger arguments, including an additional argument that he does not renew on appeal regarding merger of the Felonious Assaults with each other.

> **With regard to the Felonious Assaults, notwithstanding that the case proceeded under a complicity theory, I find that obviously there are two separate identifiable victims with regard to the two Felonious Assaults. So, I would find that the two Felonious Assaults do not merge under the Ruff analysis.**
>
> **With regard to the Aggravated Robbery in Count Three merging with either of the Felonious Assaults, the Court would just cite to State vs. Fields, a Twelfth District Court of Appeals Case, 2015-Ohio-1345. I think the facts of this case are similar in that, or, that they were in that case. The way the Ruff case was applied therein, they found that Aggravated Robbery was separate and complete before the Felonious Assaults occurred. Once the defendant pointed the gun, or, in this case Mr. Bolden pointed the gun, and the defendant being complicit in that, the Agg. Robbery was completed before the actual Felonious Assaults occurred. So, under the Fields case and State vs. Bailey is another case, and that's the First District Court of Appeals, 2015-Ohio-2997, and in that case a Robbery and a Felonious Assault did not merge under the same kind of analysis.**
>
> **I would find that none of the counts in this case merge.**

(Apr. 13, 2017, Tr. at 5-6).

-23-

**{¶54}** When reviewing the trial court's decision, we note that the trial court was correct that the Twelfth District Court of Appeals determined in *State v. Fields*, 12th Dist. Clermont No. CA2014-03-025, 2015-Ohio-1345, that a Felonious Assault conviction did not merge with an Aggravated Robbery conviction. However, the facts in *Fields* are slightly different than the facts of the case here, and the Felonious Assault in *Fields* was charged under a different provision than in the case before us (R.C. 2903.11(A)(1) in *Fields* rather than (A)(2) here).

**{¶55}** Nevertheless, as the trial court found, the Aggravated Robbery was completed when Bolden pointed the gun at Gilcrease and demanded that he empty his pockets. Both Felonious Assaults were committed after that. Or, conversely, the trial court could have found that both Felonious Assaults occurred before an Aggravated Robbery, when Bolden actually took the phone from Gilcrease, who was still on the ground from having been shot by Bolden.

**{¶56}** Pryor seems to contend that because he only conducted the single act of giving the gun to Bolden, he should only be held liable for one act. We disagree. Based on the facts and circumstances specific to this case, we cannot find that the trial court erred in determining that the Felonious Assault convictions and the

Aggravated Robbery conviction do not merge.[3]  Thus Pryor's seventh assignment of error is overruled.

*Eighth Assignment of Error*

**{¶57}** In Pryor's eighth assignment of error, he contends that the trial court erred in imposing consecutive sentences as to the Felonious Assault counts. Specifically, he argues that the trial court erred in making its consecutive sentences findings pursuant to R.C. 2929.14(C)(4).

Standard of Review

**{¶58}** Revised Code 2953.08(G)(2) governs the review of felony sentencing, reading in pertinent part:

> **The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:**
>
> **(a)   That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;**
>
> **(b)   That the sentence is otherwise contrary to law.**

---

[3] We note that even if Pryor's convictions did merge, it would not likely lessen his sentence as the Aggravated Robbery sentence was run concurrently with the other convictions.  However, that would not make such an error harmless as Pryor would still have an extra unnecessary conviction.

Based on the controlling statute, in order to reverse a trial court's sentence, we must determine that the sentence is clearly and convincingly contrary to law.

Consecutive Sentences

{¶59} In this case Pryor argues that the trial court erred by imposing consecutive sentences for his Felonious Assault convictions. Before a trial court can impose consecutive sentences, the trial court has to make certain findings pursuant to R.C. 2929.14(C)(4), which reads:

> **(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:**
>
> **(a)   The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**
>
> **(b)   At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.**
>
> **(c)   The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.**

{¶60} In making its consecutive sentence findings pursuant to R.C. 2929.14(C)(4), the trial court is required to make the findings and incorporate them into the sentencing entry; however, the trial court has "no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, at syllabus.

Analysis

{¶61} In this case, the trial court made the following findings with regard to consecutive sentencing at the sentencing hearing.

> **I'm going to impose the sentences on Count One and Count Two, the two Felonious Assaults, since they're separate victims, I'm going to impose those consecutive to each other. The reason I'm making Counts one and Two consecutive to each other is I find that consecutive sentences are necessary to protect the public from future crime and also to punish the defendant and I find that consecutive sentences are not disproportionate to the seriousness of his conduct on those two Felonious Assaults and to the danger that he poses. I also find that the two Felonious Assaults were committed as part of one or more courses of conduct and that the harm caused was so great and unusual that no single prison term for any of those two offenses adequately reflects the seriousness of the conduct.**

(Apr. 13, 2017, Tr. at 29). The trial court's findings at the sentencing hearing were explicitly incorporated into its judgment entry.

{¶62} The findings that were made by the trial court appear to be in clear compliance with R.C. 2929.14(C)(4). However, Pryor does not really contest whether the trial court made the findings pursuant to R.C. 2929.14(C)(4), rather, he

essentially contends that the trial court's findings were not supported by the evidence in this case.

**{¶63}** More specifically, Pryor argues that it is illogical for the trial court to find that no single sentence could adequately reflect the seriousness of Pryor's conduct, and yet the trial court sentenced Pryor to two minimum consecutive sentences on the felonious assault counts, which combined would equal less than the maximum possible sentence for one count of Felonious Assault.[4] Basically, Pryor seeks to have this Court issue a ruling that a trial court cannot sentence an offender to consecutive sentences if the consecutive sentences amount to less than the maximum allowable prison term for one of the two counts. Such a blanket ruling would severely restrict a trial court from fashioning a sentence as it sees fit, and Pryor cites no legal authority to support it. Given that Pryor is unable to demonstrate that the trial court's sentence was clearly and convincingly contrary to law, we cannot find that the trial court erred and Pryor's eighth assignment of error is overruled.

---

[4] One count of Felonious Assault carries a minimum prison term of 2 years and a maximum prison term of 8 years. Consecutive prison terms of 2 years for two separate counts amounts to 4 years, one-half of a maximum prison term for a single count.

*Conclusion*

**{¶64}** For the foregoing reasons Pryor's assignments of error are overruled and the judgment of the Allen County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**