DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Ronnie Lee Jennings, appeals from his conviction in the Summit County Court of Common Pleas for attempted rape, kidnapping, unlawful restraint and gross sexual imposition. Furthermore, Mr. Jennings appeals from his subsequent classification as a sexual predator. We affirm.
 I. {¶ 2} On the night in question, the female victim and a female friend met two acquaintances at a local bar. While there, the two women observed a man sitting alone at a nearby table, but had no contact with him. After a couple of drinks, the victim and her friends left and went to another bar. At the second bar, the victim ordered a drink but had not finished it by the time the friends left for home. Because their homes were in different directions, the victim was left to walk home alone, back past the first bar. It was late and dark and raining.
 {¶ 3} Upon reaching her front porch and attempting to unlock the door, the victim was confronted by an African-American male, approximately six feet tall and 150 lbs., with bad acne scars and straight, chin-length hair. He attacked her and she struggled and screamed. The man grabbed her, twice shoved her to the ground and eventually forced his hand into her pants where he felt her genital area for several seconds while the victim continued to resist. Although at least one hand was inside her underwear, he did not make penetration before the victim was able to remove his hand by force, as she continued to struggle. At this point the attacker fled without further advances, but the victim was left bruised and scratched, her jeans were torn, and she was badly frightened.
 {¶ 4} The victim called 911 and when the police arrived she gave a description. As officers patrolled the neighborhood, the victim was twice that night taken out in a police car to view potential suspects who had been detained based on her description. After observing each of these suspects, the victim assured the officers that neither was her attacker.
 {¶ 5} Subsequently, the police compiled a six-person photo array of possible suspects, based on the victim's description and a pool of some 700 photographs. Officer James Gilbride testified that Mr. Jennings' photo was included in the array based on an encounter the officer had with Mr. Jennings approximately one month earlier. Four days after the incident, Detective William Bosak showed the photo array to the victim and asked if she recognized any of the six men. After viewing the array for almost five seconds, she unequivocally identified Mr. Jennings as her attacker. The victim stated that although it was dark and her porch had no light, she was able to observe Mr. Jennings during the attack from the nearby streetlights, as well as while he walked away. Furthermore, she recognized Mr. Jennings as the man who had been sitting alone in the bar earlier in the evening.
 {¶ 6} The officers arrested Mr. Jennings and charged him with: kidnapping, per R.C. 2905.01(A)(4), a first degree felony; attempted rape, per R.C. 2907.02(A)(2), a second degree felony; abduction, per R.C. 2905.02(A)(2), a third degree felony; and gross sexual imposition, per R.C. 2907.05(A)(1), a fourth degree felony.
 {¶ 7} Mr. Jennings pled not guilty, and moved to suppress the victim identification based on the claim that the photo array was impermissibly suggestive. A hearing was held, the motion was denied, and the case proceeded to jury trial. During a two day trial, the State presented evidence, including testimony by the victim and the investigating officers. A jury found Mr. Jennings guilty on all counts and sentenced him accordingly. Because two of the counts were sex offenses, the trial court conducted a hearing and ultimately determined that Mr. Jennings is a sexual predator, per R.C. Chapter 2950.
 {¶ 8} Mr. Jennings appeals from his convictions and sexual predator classification. He asserts four assignments of error for review, but we address the first two assignments together to facilitate review.
 II. A. First Assignment of Error
"The state of ohio failed to meet the constitutionally required burden of proof — beyond a reasonable doubt — when it failed to offer sufficient evidence to establish that appellant Jennings committed the offenses of attempted rape, kidnapping, unlawful restraint, and gross-sexual imposition."
 Second Assignment of Error
"Contrary to Art. 1, § 5 of the Ohio State Constitution, the verdict convicting Mr. Jennings of attempted rape, kidnapping, unlawful restraint, and gross-sexual imposition is against the manifest weight of the evidence."
 {¶ 9} In his first and second assignments of error, Mr. Jennings alleges that the prosecution failed to prove his guilt in either of two aspects: his intent to commit the crime or his identity as the attacker. Thus, Mr. Jennings charges that the State's evidence was insufficient to meet its burden of proof and that the verdict was against the manifest weight of the evidence. We disagree.
 {¶ 10} As a preliminary matter, we observe that sufficiency of the evidence and weight of the evidence are legally distinct issues. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Effectively, the test for sufficiency is whether the prosecution met its burden of production, while a manifest weight challenge tests whether the prosecution met its burden of persuasion. Id. at 386-88. When a defendant asserts that his conviction is against the manifest weight of the evidence:
"[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340. See, also, Thompkins,78 Ohio St.3d at 387.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Otten,33 Ohio App.3d at 340, citing State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 11} Sufficiency of the evidence is required even to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. See Thompkins, 78 Ohio St.3d at 388. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 12} Mr. Jennings contends that the prosecution's evidence did not establish that he had the intent to abduct or rape the victim, or that he was even the person who committed the attack. Specifically, Mr. Jennings argues that the State offered no proof that the attack was intended to culminate in a rape, or that any of the charged offenses were done purposefully or knowingly. Furthermore, he argues that the greater weight of the evidence demonstrates that the victim misidentified him as her attacker. On this basis, Mr. Jennings argues that the proof at trial was insufficient or against the manifest weight of the evidence, and urges that his convictions be reversed.
 {¶ 13} We begin by noting that when the disputed issue is the defendant's culpable mental state, such as a defendant's intent, proof often must be derived from circumstantial evidence, as direct evidence will seldom be available. State v. Lott (1990),51 Ohio St.3d 160, 168. Accordingly, it is well settled that the State may rely on circumstantial evidence to prove an essential element of an offense, as "[c]ircumstantial evidence and direct evidence inherently possess the same probative value[.]" Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. In reaching its conclusion, the jury must weigh all the evidence, circumstantial or direct, against the standard of proof of beyond a reasonable doubt. Id. at 272.
 {¶ 14} Next, we recognize: "It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." (Internal quotations omitted.) Lott, 51 Ohio St.3d at 168. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. Id., citing Hurt v.Charles J. Rogers Transp. Co. (1955), 164 Ohio St. 329, 334. By this understanding, a jury may infer intent to abduct or rape as the logical result of the predicate act based on the totality of the facts and circumstances of the attack, the testimony presented at trial, and the credibility or demeanor of the witnesses.
 {¶ 15} Finally, we note that in sex offense cases such as this, courts have consistently held that the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration. State v. Matha (1995),107 Ohio App.3d 756, 759, citing State v. Lewis (1990),70 Ohio App.3d 624, 638. See State v. Economo (1996), 76 Ohio St.3d 56, syllabus. Thus, the testimony of the victim as to the identity of the attacker and the substance of the attack may be enough. We need not search for additional, corroborating evidence.
 {¶ 16} Our role on this appeal is to review the entire record and weigh all the evidence to consider whether the jury "clearly lost its way and created such a manifest miscarriage of justice[.]" See Otten, 33 Ohio App.3d at 340; Thompkins,78 Ohio St.3d at 387. That is, based on the particular errors alleged in this appeal, did the State produce sufficient evidence, direct or circumstantial, that the jury could not have concluded beyond a reasonable doubt that Mr. Jennings intended to restrain and rape the victim and that he was the actual attacker.
 {¶ 17} At Mr. Jennings' trial, the State produced testimony from five witnesses: the victim, her female friend, and three police officers. Most significantly, the victim testified in open court that Mr. Jennings was indeed her attacker. She testified to the attack on the porch, her terror, the violence of the struggle, and that she had recognized him immediately when confronted on the porch as the man from the first bar. She authenticated her frightened voice on the 911 call, recounted her description of him to the police, and reiterated that she had assured the police that she could identify him after the attack. Regarding the photo array, she testified that she had recognized her attacker immediately, but had looked at the other five photos before identifying him to Detective Bosak, in order to be sure. And, despite his different hairdo, she unequivocally identified Mr. Jennings in court as her attacker, stating:
"I have no doubts at all. I saw him in the bar. We made eye contact in the bar. And his face was right in front of me through the storm door, right before he grabbed me, and he's sitting right here."
 {¶ 18} On cross-examination, the victim insisted that there was sufficient light on her porch that night to see and recognize the attacker. Also, when presented with a photograph of a man similar in appearance to Mr. Jennings, the victim stated that the man looked familiar, but did not identify him as her attacker or as Mr. Jennings.
 {¶ 19} The victim's female friend testified to the portion of the events she observed that night, and offered an identification of Mr. Jennings as the man the two women saw sitting alone at the bar earlier that night. She also testified to picking Mr. Jennings out of the photo array. However, when presented with the photograph of the look-alike, on cross-examination, the friend erroneously identified him as the defendant, Mr. Jennings.
 {¶ 20} Detective Bosak was also shown the picture of the look-alike, but properly identified him as another individual. Detective Bosak explained that Mr. Jennings' attorney had provided the police with the photograph as a possible suspect, but that the police had not pursued it once they determined that the man in the photograph had actually been in jail on the date of the attack. Detective Bosak also testified that the victim was scratched, bruised, distraught and crying when he arrived at the crime scene, but that this was an ordinary demeanor for a woman recently attacked. He authenticated her torn jeans, which were introduced into evidence. He stated that on the night of the attack, the victim did not smell of alcohol and was able to give a statement, including an account of the attack and a description of the attacker. Finally, Detective Bosak testified that the victim looked at the photo array and picked out Mr. Jennings immediately, without qualification. He then identified Mr. Jennings in court.
 {¶ 21} Officer Gilbride testified that he arrived at the crime scene on the night of the attack, and that the victim gave an account of the attack and a description of the attacker. He took her to view two suspects, but both times she stated that the suspect was not her attacker. Officer Gilbride testified to his encounter with Mr. Jennings prior to the night of the attack, as well as his arrest of Mr. Jennings approximately a week after the attack. He stated that on both those occasions, Mr. Jennings had the same chin-length, straight hair as depicted in the photograph. Officer Gilbride identified Mr. Jennings in court.
 {¶ 22} At the conclusion of the State's evidence, the parties stipulated that the photograph of Mr. Jennings presented in the photo array had been taken in 1999. Although Mr. Jennings' attorney cross-examined State witnesses and introduced certain stipulated evidence, he did not call any witnesses or put on a defense. After closing arguments, jury instruction, and jury deliberation, the jury convicted Mr. Jennings on all counts.
 {¶ 23} Based on our review of the record, we find no basis from the evidence presented to conclude that the finder of fact lost its way or created a manifest miscarriage of justice. SeeOtten, 33 Ohio App.3d at 340; Thompkins,78 Ohio St.3d at 387. Therefore, we find that the conviction was not against the manifest weight of the evidence. Having found that Mr. Jennings' conviction was not against the manifest weight of the evidence, we also conclude that the prosecution met its burden of proof and that there was sufficient evidence to support the conviction. SeeRoberts, supra. Accordingly, Mr. Jennings' first two assignments of error are overruled.
 B. Third Assignment of Error
"The trial court erred when it failed to suppress the photo array identification presented to the victim prior to trial."
 {¶ 24} In his third assignment of error, Mr. Jennings asserts that the trial court erred by admitting the victim's identification, based on the alleged impermissibly suggestive photo array. Specifically, Mr. Jennings argues that the photo array was so blatantly suggestive that it caused the victim to misidentify Mr. Jennings as her attacker, and thus warrants a reversal of his conviction. We disagree.
 {¶ 25} Ohio has adopted the United States Supreme Court's two-part analysis for this situation: (1) whether the identification was unnecessarily suggestive of the suspect's guilt, and (2) whether the identification was ultimately unreliable under the circumstances. See State v. Waddy (1992),63 Ohio St.3d 424, 438-39. The United States Supreme Court has set forth a standard of review:
"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."Simmons v. United States (1968), 390 U.S. 377, 384,19 L.Ed.2d 1247.
The Court offered the following rationale for such a high threshold:
"The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." Id.
 {¶ 26} The Ohio Supreme Court followed this analytical approach in a case closely on point:
"When a witness has been confronted with a suspect before trial, due process requires a court to suppress an identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. However, no due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation, but is instead the result of observations at the time of the crime.
"The day after the murder occurred, [the witnesses] picked [the defendant] out of a lineup and identified him as the man they saw with [the victim]. * * * [The defendant] claims these lineups were unnecessarily suggestive, because the other participants looked so unlike him that he stood out.
"On both November 27 and December 3, [the defendant] was lined up with five other black males. All, including [the defendant], had facial hair; however, the complexions of the men varied and none had a bushy, curly hairstyle like [the defendant's]." (Internal citations omitted.) State v. Davis (1996),76 Ohio St.3d 107, 113.
 {¶ 27} Just as in Davis, Mr. Jennings in the present case contends that even though the five others depicted with him in the photo array were black males, they differed in complexion and hairstyle. Specifically, Mr. Jennings notes that he had acne, while not all of the others did; that he had straight, chin-length hair, while some of the others had slightly curlier or longer or shorter hair; and that he had darker or lighter skin tone than some of the others. Based on our review of the photo array, we conclude that Mr. Jennings does not stand out as unique in this photo array and that these are not such drastic differences as to make the photo array impermissibly suggestive.
"A defendant in a lineup need not be surrounded by people nearly identical in appearance. Even significant dissimilarities of appearance or dress will not necessarily deny due process." (Internal citations, quotations and edits omitted.) Id. at 112.
Furthermore, because the victim testified as to Mr. Jennings' identification at trial, subject to cross-examination, reversal would be limited to a finding of a "very substantial likelihood of irreparable misidentification." Simmons, 390 U.S. at 384.
 {¶ 28} The Ohio Supreme Court in Davis further describes the procedure by which a court assesses reliability of the identification:
"Even if we were to accept [defendant's] contention that the lineups were unnecessarily suggestive, the identifications were nonetheless reliable under the totality of the circumstances. In order to determine the reliability of the identification, we must consider (1) the witness's opportunity to view the defendant at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification." (Internal citations omitted.)Davis, 76 Ohio St.3d at 113.
In the present case, the victim was confronted face-to-face with her attacker, Mr. Jennings. Although she fought and screamed, she had ample opportunity to view him both during and after the attack, as he walked away. Before the attack had begun, she observed him through the storm door's window, standing on the porch ready to attack, and she recognized him from earlier at the bar. We find it reasonable to conclude that the victim was paying attention immediately before, during, and after the attack. The victim's initial description to the police is an accurate description of Mr. Jennings, as depicted in the photo array, although he claims to have worn a different hairstyle to trial. She provided police with an accurate description of his race, height, weight, age, hair length, hair color, skin tone, and complexion. Upon being shown the photo array, she identified Mr. Jennings within seconds — an identification that was certain and unequivocal. Only four days had passed from the time of the attack until the officers presented the photo array to the victim for identification. The totality of these factors confirms the reliability of the identification. See Davis,76 Ohio St.3d at 113.
 {¶ 29} Furthermore, the victim had previously been shown two prior suspects and had refused to identify either one as her attacker. See, e.g., State v. Garner (1995), 74 Ohio St.3d 49,61-62. Also, upon viewing the photo array, she picked Mr. Jennings immediately, she was entirely certain, and the police did not indicate in any way who she should choose. See, e.g.,State v. Murphy (2001), 91 Ohio St. 3d 516, 534. These circumstances offer additional indicia of reliability.
 {¶ 30} From the above analysis, we conclude that the photo array used to identify Mr. Jennings was not unnecessarily suggestive, based merely on the alleged dissimilarities, nor was the identification so unreliable as to "give rise to a very substantial likelihood of irreparable misidentification."Simmons, 390 U.S. at 384.
 {¶ 31} Therefore, we find that the trial court did not err in denying Mr. Jennings' motion to suppress. Mr. Jennings' third assignment of error is overruled.
 C. Fourth Assignment of Error
"The trial court erred in classifying appellant jennings as a sexual predator because the state of ohio presented insufficient evidence to prove by clear and convincing evidence tht [sic] appellant jennings would commit additional sexual offenses in the future. In addition, such a finding was against the manifest weight of the evidence presented by the state of ohio. Finally, in adjudicating appellant jennings as a sexual predator, the trial court clearly lost its way and created such a manifest miscarriage of justice that the adjudication must be reversed." [sic]
 {¶ 32} In his fourth assignment of error, Mr. Jennings asserts that the trial court erred in classifying him a sexual predator. Specifically, he contends that the evidence offered at the sexual predator hearing did not support the finding that he was likely to re-offend, nor does the weight of the evidence support the overall conclusion, based on the R.C. 2950.09
statutory factors. We disagree.
 {¶ 33} Under R.C. 2950.01(E)(1), the definition of sexual predator includes an individual who has been convicted of a sexually oriented offense and who "is likely to engage in the future in one or more sexually oriented offenses." When classifying an individual as a sexual predator, the trial court must consider all relevant factors, including those listed in R.C. 2950.09(B)(3). While the trial court must consider every statutory factor, every factor need not apply for determination that an individual is a sexual predator. State v. Smith (June 2, 1999), 9th Dist. No. 18622. The court need only discuss the relevant factors on the record. State v. Eppinger (2001),91 Ohio St.3d 158, 166, citing State v. Cook (1998),83 Ohio St.3d 404, 426.
 {¶ 34} The trial court's decision must be supported by clear and convincing evidence. State v. Bolyard, 9th Dist. No. 20801, 2002-Ohio-2203, at ¶ 10, citing State v. McKinney (Jan. 9, 2002), 9th Dist. No. 3207-M. This Court will overturn a sexual predator determination only upon a finding that the trial court's decision was clearly erroneous. State v. Unrue, 9th Dist. No. 21105, 2002-Ohio-7002, at ¶ 6. That is, as long as some competent, credible evidence supports the classification, we must affirm the trial court's decision. Id. We will reverse only in exceptional cases, where the result is a "complete violation of substantial justice." (Internal quotations omitted.) Shepherd v.Freeze, 9th Dist. No. 20879, 2002-Ohio-4252, at ¶ 8, quotingRoyer v. Bd. of Edn. (1977), 51 Ohio App.2d 17, 20.
 {¶ 35} In the present case, Mr. Jennings was convicted of attempted rape, in violation of R.C. 2907.02(A)(2), and gross sexual imposition, in violation of R.C. 2907.05(A)(1), which are both sexually oriented offenses. R.C. 2950.01(D)(1)(a). With regard to the relevant R.C. 2950.09(B)(3) factors, evidence at the hearing focused on Mr. Jennings' criminal history, the cruelty of his act, and additional behavioral characteristics. Mr. Jennings had a lengthy criminal history, had served four prison terms, and had not responded favorably to those prior sanctions. See R.C. 2950.09(B)(3)(b). Mr. Jennings displayed cruelty to the victim in the violence of the attack, which involved repeatedly shoving her to the ground, tearing her clothing, and leaving her bruised and scratched. See R.C.2950.09(B)(3)(i). Finally, the trial court noted the additional behavioral characteristics which contributed to the overall assessment: Mr. Jennings singled her out, watched her throughout the evening, and followed her home; he physically harmed her and tore her clothing; and he failed to cooperate with the preparation of the pre-sentence investigation and displayed no remorse for his conduct.
 {¶ 36} In considering the remaining factors, we note that neither Mr. Jennings' age nor the victim's age is particularly pertinent to the assessment, as they are both adults. See R.C.2950.09(B)(3)(a). Similarly, Mr. Jennings had no prior occasion to participate in a sex offender treatment program, so that factor is not applicable. See R.C. 2950.09(B)(3)(f). We also recognize that other factors could weigh in Mr. Jennings' favor: his current act did not involve multiple victims (R.C.2950.09(B)(3)(d)); he did not use drugs or alcohol to impair his victim (R.C. 2950.09(B)(3)(e)); and he has not engaged in any demonstrated pattern of abuse (R.C. 2950.09(B)(3)(h)). Finally, Mr. Jennings suffers from no disclosed mental disability or illness. See R.C. 2950.09(B)(3)(g).
 {¶ 37} After reviewing the evidence in its entirety, we cannot say that the decision of the trial court to classify Mr. Jennings a sexual predator was clearly erroneous. Further, we conclude that the finding that Mr. Jennings is likely to reoffend is supported by competent, credible evidence. Accordingly, Mr. Jennings' fourth assignment of error is overruled.
 III. {¶ 38} Mr. Jennings' assignments of error are overruled. The judgments of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J., Slaby, J. Concur.