[Cite as *State v. Elek*, 2023-Ohio-41.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

v.

MICHAEL B. ELEK

    Appellant

C.A. No.     20CA011611

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    12CR085338

DECISION AND JOURNAL ENTRY

Dated: January 9, 2023

TEODOSIO, Presiding Judge.

{¶1} Defendant-Appellant, Michael Elek, appeals from the judgment of the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} When she was 15 years old, S.W., her mother, and her younger sister moved in with Mr. Elek and his family. Mr. Elek was the younger sister's uncle, and he and his wife agreed to let S.W. and her family live with them after S.W.'s mother lost her job. According to S.W., Mr. Elek began watching her in her sleep and eventually started touching her while she slept. She described how he first rubbed her back and buttocks over her clothes and later inserted his finger into her pajama shorts. S.W. never contacted the police to report Mr. Elek's conduct, and she left his residence within two to three months. About eight years later, a detective investigating Mr. Elek contacted S.W. While speaking with the detective, S.W. disclosed the sexual abuse that had occurred.

{¶3}    Relevant to this appeal, Mr. Elek was indicted on one count of rape and one count of gross sexual imposition.[1]   A jury found him not guilty of rape but guilty of gross sexual imposition.  The trial court sentenced him to 18 months in prison and classified him as a tier I sexual offender.

{¶4}    Mr. Elek now appeals from his conviction and raises four assignments of error for this Court's review.  For ease of analysis, we rearrange several of the assignments of error.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY NOT DISMISSING THE INDICTMENT UNDER CRIM. R. 29 AFTER THE STATE RESTED DUE TO INSUFFICIENT EVIDENCE.

{¶5}    In his first assignment of error, Mr. Elek argues the trial court erred by not dismissing his indictment pursuant to Crim.R. 29.  According to Mr. Elek, the State set forth insufficient evidence to sustain his conviction for gross sexual imposition.  We disagree.

{¶6}    "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence."  *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33.  Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  "A challenge to the sufficiency of the evidence concerns the State's burden of production * * *" and is, "[i]n essence, * * * a test of adequacy."  *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25; *Thompkins* at 386.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential

---

[1] Mr. Elek also was indicted on a second count of gross sexual imposition and a count of attempted gross sexual imposition, but those counts pertained to different victims.  The trial court severed those counts for purposes of his trial, and they are not at issue in this appeal.

elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

**{¶7}** R.C. 2907.05(A)(1) forbids a person from having sexual contact with another person who is not his spouse when he "purposely compels the other person * * * to submit by force or threat of force." Whoever violates the foregoing statute is guilty of gross sexual imposition. R.C. 2907.05(C). While sexual imposition has a corroboration requirement, *see* R.C. 2907.06(B), the State may prove gross sexual imposition based solely on a victim's testimony, *see State v. Jennings*, 9th Dist. Summit No. 22016, 2004-Ohio-5447, ¶ 15.

**{¶8}** S.W. testified she, her mother, and her younger sister lived with Mr. Elek and his family for two to three months in 2004 when she was 15 years old. Mr. Elek was her younger sister's uncle, and S.W.'s family needed a place to live after her mother lost her job. When S.W. initially began staying at Mr. Elek's house, she slept by herself on a cot in the basement. Her mother slept on a coach in the living room, and her sister shared an upstairs bedroom with Mr. Elek's daughter.

**{¶9}** S.W. testified the basement was finished, had a pool table and bar, and was "like [Mr. Elek's] man cave[.]" When she first started sleeping in the basement, S.W. stated, she sometimes awoke because she felt as if someone was watching her. On those occasions, she would open her eyes and see Mr. Elek standing by the bar or over in a corner. She testified that she initially dismissed any concerns she might have because she knew the house belonged to him and it was his right to enjoy his basement. Eventually, however, S.W. awoke to Mr. Elek touching her in her sleep. She specified that she felt him touching her back, and later, touching her butt and

trying to put his hand up the shorts she wore to bed. S.W. confirmed that, on more than one occasion, she felt Mr. Elek insert his finger into her vagina. She described how she would freeze before trying to move away "to like scare him off * * *."

{¶10} S.W. told her mother what Mr. Elek was doing, but her mother insisted they could not accuse Mr. Elek without proof because he would just deny it. At her mother's suggestion, S.W. began sleeping upstairs with her younger sister and Mr. Elek's daughter. She used a toy box to blockade the door at night but did not recall Mr. Elek ever trying to come into the room. She testified that her family continued to live with Mr. Elek and his family until her mother, Mr. Elek, and his wife got into a disagreement. S.W. and her family then began living elsewhere.

{¶11} S.W. testified she never reported Mr. Elek's conduct to the police because she had no proof to support her accusations. She remained silent until 2012 when Detective Mark Carpentiere approached her and asked about Mr. Elek. The detective confirmed he began investigating Mr. Elek in 2012. He testified he spoke with S.W. because, during his investigation, he learned Mr. Elek may have inappropriately touched her while she and her family were living at his house. When he spoke with S.W., she disclosed the sexual abuse that had occurred.

{¶12} Mr. Elek argues his conviction is based on insufficient evidence because S.W.'s testimony lacked contextual and contemporaneous support. He argues the State should not be permitted to secure a conviction for gross sexual imposition based strictly on the "bald and generic assertions" of an alleged victim. Because the State failed to introduce evidence corroborating S.W.'s accusations in its case-in-chief, Mr. Elek argues, his conviction is not based on sufficient evidence.

{¶13} Mr. Elek essentially invites this Court to adopt a new standard and read a corroboration requirement into the gross sexual imposition statute. We decline to do so. Unlike

the sexual imposition statute, the gross sexual imposition statute has no corroboration requirement. *Compare* R.C. 2907.06(B) *with* R.C. 2907.05. "[I]n sex offense cases such as this, courts have consistently held that the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration." *Jennings*, 2004-Ohio-5447, at ¶ 15.

{¶14} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded the State proved the elements of gross sexual imposition beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus. S.W. testified Mr. Elek repeatedly touched her body, including her butt and genitals, with his finger while she was trying to sleep and that she would move her body away from him to try to make him stop. Her testimony was sufficient to support his conviction, *see Jennings* at ¶ 15, and any issues related to her credibility are not reviewable in the context of the sufficiency of the evidence, *see Hall*, 2017-Ohio-73, at ¶ 10. Upon review, Mr. Elek has not shown the State set forth insufficient evidence to sustain his conviction for gross sexual imposition. Accordingly, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY ADOPTING THE JURY VERDICT OF GUILTY ON THE GSI CHARGE BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶15} In his third assignment of error, Mr. Elek argues his conviction for gross sexual imposition is against the weight of the evidence. Specifically, he argues the jury lost its way when it chose to believe S.W. We disagree.

{¶16} A challenge to the manifest weight of the evidence concerns the State's burden of persuasion. *State v. Klafczynski*, 9th Dist. Medina No. 18CA0084-M, 2020-Ohio-3221, ¶ 7. This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶17} Mr. Elek testified in his own defense, and his wife also testified on his behalf. The wife explained how she invited S.W. and her family to live with them after S.W.'s mother came to visit and told them she was homeless. The wife testified Mr. Elek was not happy with the arrangement and things grew steadily worse as S.W.'s mother refused to find another job. She described how S.W.'s mother would spend much of her day on the couch and leave her children in their care while she went out all night. The arrangement led to several arguments, and tensions only increased when the wife reported S.W.'s mother for welfare fraud. The wife testified things came to a head when S.W.'s younger sister used inappropriate language with her and Mr. Elek, and Mr. Elek spanked her. As a result of the incident, S.W.'s mother accused Mr. Elek of child abuse, had S.W. call the police, and accused Mr. Elek's father of assault when he attempted to remove her from the home. When the police arrived, they escorted S.W.'s mother off the property, bringing their shared living arrangement to an end.

{¶18} Mr. Elek's wife agreed S.W. initially slept in their basement and later moved upstairs to share a bedroom with her younger sister and their daughter. Yet, she claimed S.W. frequently spent the night elsewhere and Mr. Elek worked the night shift. She also claimed there was never any toy box blockading her daughter's bedroom door when she woke her for school in the mornings.

{¶19} On cross-examination, the State asked Mr. Elek's wife whether she had ever accused Mr. Elek of touching S.W. or being a sexual predator. After she denied having made either of those accusations, the State introduced a list she authored in 2012. The list was not admitted into evidence, but the court allowed the State to ask the wife multiple questions about it. The wife admitted the list contained S.W.'s name, the date 2004, and a note that Mr. Elek had touched S.W. in her sleep. The wife also wrote on the list (1) that Mr. Elek "had a porn obsession," and (2) "[Mr. Elek] says he didn't do it? Really!" The wife denied that she gave the list to a friend so the friend could give the list to the police. It was her testimony that she wrote the list at the direction of a marriage counselor. She claimed it was only meant to summarize the accusations she had heard from others (i.e., S.W.'s mother) and that it was stolen from her purse when she had visitors over her house. Even so, she admitted she wrote "[Mr. Elek] says he didn't do it? Really!" because, at that point, she "had doubt in [her] heart" about Mr. Elek and did not know if he had touched S.W.

{¶20} Much like his wife, Mr. Elek testified he was upset when his wife invited S.W.'s mother and her children to stay with them. He too described how the situation worsened as S.W.'s mother refused to find a job or help and how she eventually accused him of child abuse when he spanked her younger daughter. He testified S.W. was angry when the police refused to charge him with anything related to her sister. She also was angry about the way her mother was being treated.

Mr. Elek confirmed he worked nights around the time S.W. claimed he sexually assaulted her. He also claimed he always accepted overtime, so he usually worked between five and seven days a week. On cross-examination, Mr. Elek acknowledged that he was interviewed by Detective Carpentiere and, during that interview, said his wife was steadily accusing him of being a sexual predator.

{¶21} Following Mr. Elek's testimony, the State called a rebuttal witness in response to the testimony of Mr. Elek's wife. The rebuttal witness was a close friend of the family who spent time with Mr. Elek's wife in January 2012. The friend confirmed the wife gave her the list discussed during the wife's testimony. According to the friend, Mr. Elek's wife gave her the list after she told the wife she would be going to the police station later that day.

{¶22} Mr. Elek argues the jury lost its way when it chose to believe S.W.'s testimony over his testimony and the testimony of his wife. He notes the jury acquitted him of rape, meaning they did not believe S.W.'s testimony on that point. Because his charges were "factually intertwined[,]" Mr. Elek argues, the jury ought to have acquitted him of both rape and gross sexual imposition.

{¶23} Having reviewed the record, this Court cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice when it found Mr. Elek guilty of gross sexual imposition. *See Otten*, 33 Ohio App.3d at 340. The jury heard S.W. testify that Mr. Elek sexually assaulted her on multiple occasions while she was trying to sleep. There was no evidence she had a habit of making false accusations or bore any ill will against Mr. Elek at the time she accused him. There was evidence she became angry when the police refused to hold Mr. Elek accountable for spanking her younger sister and ordering her mother to leave his home, but that incident occurred in 2004. S.W. did not report that any sexual misconduct occurred until 2012, and she only did so after a detective sought her out. As the trier of fact, the jury was in the best possession

to assess her credibility and decide whether she was telling the truth. *See State v. Brown*, 9th Dist. Lorain No. 20CA011618, 2021-Ohio-2540, ¶ 48. Moreover, the fact that the jury acquitted Mr. Elek of rape is inapposite as "juries are not required to reach consistent verdicts between separate counts." *State v. Singh*, 9th Dist. Summit No. 28819, 2018-Ohio-3473, ¶ 15. Upon review, Mr. Elek has not shown this is the exceptional case where the jury lost its way by finding him guilty of gross sexual imposition. *See Otten* at 340. As such, his third assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY ALLOWING THE JURY TO HEAR ABOUT A LIST OF ALLEGED SEXUAL MISCONDUCT BY APPELLANT VIA AN IMPROPER APPLICATION OF EVID. R. 613(B)(2)(a).

**{¶24}** In his second assignment of error, Mr. Elek argues the trial court erred when it allowed the State to question his wife about the list she authored in 2012. Mr. Elek argues the list was not proper impeachment evidence because it amounted to hearsay and did not qualify for admission under Evid.R. 613(B)(2)(a). For the following reasons, we reject his argument.

**{¶25}** Initially, we must consider which standard of review applies herein. Mr. Elek claims he objected when the State sought to cross-examine his wife about the list she authored. Yet, he has not provided a record citation for his objection, *see* Loc.R. 16(D), and the record contradicts his assertion. The attorneys discussed the introduction of the list at side bar. Defense counsel asked the prosecutor whether she intended to ask the wife about the entire list or just the portions related to S.W. When the prosecutor confirmed her questions would be limited to the portions related to S.W., the following exchange took place:

[DEFENSE COUNSEL]: I don't care. I mean unless the Judge cares. I mean I still wouldn't like it, but –

[PROSECUTOR]: She wrote it.

THE COURT: Let me take a look at this, first of all.

[DEFENSE COUNSEL]: I'm just worried about what it's going to do as far as other things. I'm not worried about all the other names, all the other things on that.

THE COURT: Well, I've never seen this document before. I need to read it * * *.

Alright. From looking at this, the document itself will not be admitted into evidence unless it were severely redacted.

[THE PROSECUTOR]: Right.

THE COURT: At this point you're just going to use it to cross-examine her or refresh her recollection or whatever?

[THE PROSECUTOR]: Uh-huh.

THE COURT: Okay. But do not stray beyond any question that relates to other potential victims, right? Understood.

[THE PROSECUTOR]: Uh-huh.

THE COURT: Okay. Here you go.

Defense counsel did not object to the court's ruling. Thus, Mr. Elek is limited to a claim of plain error. *See State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 20.

{¶26} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "To establish plain error, one must show (1) an error occurred, i.e., a deviation from a legal rule, (2) the error is plain, i.e., an obvious defect in the proceedings, and (3) the error affected a substantial right, i.e., affected the outcome of the proceedings." *State v. Grant*, 9th Dist. Summit No. 29259, 2019-Ohio-3561, ¶ 5, citing *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 36. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶27} "Evid.R. 613 addresses impeachment by self-contradiction, that is, the use of a witness's prior inconsistent statements to impeach the witness." *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶ 200. A party may introduce extrinsic evidence of a prior inconsistent

statement if "the subject of the prior statement is a fact of consequence to the determination of the action[,] * * * the statement is offered solely for impeachment, the witness is offered a prior opportunity to explain or deny the statement, and the opposing party is able to question the witness regarding the statement." *State v. Moorer*, 9th Dist. Summit No. 27685, 2016-Ohio-7679, ¶ 20, citing Evid.R. 613(B). Extrinsic evidence offered in accordance with Evid.R. 613(B) is not considered hearsay because it is offered strictly to impeach the witness and not to prove the truth of the matter asserted. *Tench* at ¶ 204. *See also State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 182-185.

{¶28} Mr. Elek argues the trial court erred when it allowed the State to ask his wife about the list she authored because any information she wanted to share with her therapist was not a fact of consequence to the determination of the action. *See* Evid.R. 613(B)(2)(a). According to Mr. Elek, the list was "not an accusation" but a therapeutic tool his wife drafted while experiencing martial difficulties. He claims the State introduced the list and evidence related to the list to prove the truth of the matter asserted therein. Because the State's evidence did not comply with Evid.R. 613(B) and amounted to hearsay, Mr. Elek argues, the trial court abused its discretion when it allowed the State to introduce the list on cross-examination.

{¶29} The record reflects the State sought to admit the wife's list to refute testimony she gave on cross-examination. While testifying, the wife denied ever accusing Mr. Elek "of doing something to [S.W.]" The State sought to impeach her with the list to show she had, in fact, accused Mr. Elek of sexually abusing S.W. As previously noted, the wife then responded by claiming the list was not an accusation on her part but a summary of accusations she had heard from others and had drafted at the direction of her therapist. After the wife denied that she had

given the list to her friend and claimed it had been stolen, the State called the friend to testify as a rebuttal witness and refute the wife's testimony on that point.

{¶30} Mr. Elek's arguments concerning the classification of the list as a marital tool versus a direct accusation on the part of his wife sound in weight rather than admissibility. *See State v. Andrews*, 9th Dist. Summit No. 29260, 2020-Ohio-2703, ¶ 38. The State was not required to prove the truth of the matter asserted in the list to seek its introduction under Evid.R. 613(B). *See Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, at ¶ 204; *Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, at ¶ 182-185. The State only introduced the list for the purpose of impeaching the wife with evidence of a prior inconsistent statement. Mr. Elek has made no attempt to explain why evidence tending to show his wife was lying about having accused him of sexually abusing S.W. in the past was not a fact of consequence to the determination of the action. *See* App.R. 16(A)(7). Moreover, even assuming the trial court erred by allowing the State to introduce the list and evidence related to the list, Mr. Elek has not demonstrated resulting prejudice.

{¶31} Plain error will lie only if the error that occurred "affected the outcome of the proceedings." *Grant*, 2019-Ohio-3561, at ¶ 5, citing *Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, at ¶ 36. Mr. Elek argues it is "very difficult" to believe the jury would have convicted him without the list, but the list was not proof positive of any misconduct on his part. At best, it proved his wife might be lying about her own personal suspicions regarding his innocence. The jury still had to decide whether Mr. Elek or S.W. was telling the truth. Moreover, when Mr. Elek testified, he admitted that, during his interview with Detective Carpentiere, he told the detective his wife was accusing him of being a sexual predator. Thus, even without the list, the jury heard evidence that Mr. Elek's wife was accusing him of being a sexual predator. Upon review, Mr. Elek has not shown this is the exceptional case where the trial court committed a manifest miscarriage of justice

by allowing the State to introduce the evidence discussed herein. *See Long*, 53 Ohio St.2d 91, at paragraph three of the syllabus. Accordingly, his second assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY IMPOSING THE MAXIMUM PRISON SENTENCE.

**{¶32}** In his fourth assignment of error, Mr. Elek argues the trial court erred when it sentenced him to the maximum allowable prison term. He argues the length of his sentence is inconsistent with the factors and guidelines outlined in R.C. 2929.11 and 2929.12. For the following reasons, we reject his argument.

**{¶33}** The Supreme Court of Ohio has held that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; R.C. 2953.08(G)(2). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

**{¶34}** "Trial courts have full discretion to impose a prison sentence within the statutory range" and are not "required to make findings or give their reasons for imposing * * * more than minimum sentences." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus. "Nevertheless, 'the court must carefully consider the statutes that apply to every felony case[,]' including 'R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender.'" *State v. Lucas*, 9th Dist. Summit No. 29077, 2019-Ohio-2607, ¶ 13, quoting *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38. "Unless the record shows that

[a] court failed to consider the factors, or that the sentence is 'strikingly inconsistent' with the factors, the court is presumed to have considered the statutory factors if the sentence is within the statutory range." *State v. Fernandez*, 9th Dist. Medina No. 13CA0054-M, 2014-Ohio-3651, ¶ 8, quoting *State v. Boysel*, 2d Dist. Clark No. 2013-CA-78, 2014-Ohio-1272, ¶ 13.

**{¶35}** Mr. Elek concedes his sentence falls within the statutory sentencing range for a violation of R.C. 2907.05(A)(1). His only argument is that the trial court did not properly consider the factors and guidelines set forth in R.C. 2929.11 and 2929.12 in selecting the length of his sentence within that range. According to Mr. Elek, a sentence of 18 months in prison was not warranted because the evidence against him was questionable, he was not a threat to the public, and he did not commit the worst form of the offense.

**{¶36}** In both its oral pronouncement at the sentencing hearing and its written sentencing entry, the trial court noted that it had considered the principles and purposes of sentencing outlined in R.C. 2929.11 and the sentencing factors outlined in R.C. 2929.12 in sentencing Mr. Elek to 18 months. More importantly, the record reflects the trial court ordered a presentence investigation report ("PSI") and considered the report in fashioning Mr. Elek's sentence. That PSI has not been included in the record.

**{¶37}** "This Court has consistently held that, where the appellant has failed to provide a complete record to facilitate appellate review, we are compelled to presume regularity in the proceedings below and affirm the trial court's judgment." *State v. Farnsworth*, 9th Dist. Medina No. 15CA0038-M, 2016-Ohio-7919, ¶ 16. "Because the record before us does not contain the PSI necessary for appellate review, we cannot properly review [Mr. Elek's] sentence. Without the context the PSI might provide, we cannot conclude that there is clear and convincing evidence in the record [his] sentence is contrary to law." (Internal citations omitted.) *State v. Davis*, 9th Dist.

Summit No. 29824, 2021-Ohio-1796, ¶ 10.  This Court has no choice but to affirm Mr. Elek's sentence.  *See id.*  Accordingly, his fourth assignment of error is overruled.

III.

{¶38}  Mr. Elek's assignments of error are overruled.  The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
SUTTON, J.

CONCUR.

APPEARANCES:

STEPHEN P. HANUDEL, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.