[Cite as *State v. Smerglia*, 2023-Ohio-1610.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | | C.A. No. 22CA0042-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DALE SMERGLIA | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 21CR0748 |

DECISION AND JOURNAL ENTRY

Dated: May 15, 2023

FLAGG LANZINGER, Judge.

{¶1} Defendant-Appellant, Dale Smerglia, appeals from the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} Mr. Smerglia belonged to a country club in Medina County, Ohio. One weekend, he participated in a golf tournament the club hosted. On the opening day of the tournament, he played golf in the afternoon and later returned to the clubhouse to socialize and play cards. Because he knew he would be drinking, his wife agreed she would pick him up that evening. A car accident prevented his wife from reaching Mr. Smerglia. Mr. Smerglia was unable to arrange for an Uber or a Lyft. He ultimately accepted a ride home from M.F., a female employee of the club who knew Mr. Smerglia and his family.

{¶3} According to M.F., when she drove Mr. Smerglia home, he placed his hand on her thigh, pushed her clothing and underwear aside, and touched her genitals. According to Mr.

Smerglia, he never touched M.F. and merely thanked her for the ride once they reached his house. M.F. quit her job at the country club following the incident. She did not report the incident to the police. M.F. agreed to speak to the police after a club member reported the incident.

{¶4} A grand jury ultimately indicted Mr. Smerglia on one count of attempted rape. The case proceeded to trial. The jury found him guilty of the lesser-included offense of gross sexual imposition. The trial court sentenced him to jail time and a term of community control. Additionally, the trial court classified him as a tier I sexual offender.

{¶5} Mr. Smerglia now appeals from his conviction and raises three assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT'S FINDING OF GUILT OF GROSS SEXUAL IMPOSITION (R.C. 2907.05(A)(1)) IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶6} In his first assignment of error, Mr. Smerglia argues his conviction is based on insufficient evidence and is against the manifest weight of the evidence. This Court rejects his arguments.

{¶7} Initially, we note that "[a] review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations." *State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 18. For this reason, "it is not appropriate to combine a sufficiency argument and a manifest weight argument within a single assignment of error." *State v. Mukha*, 9th Dist. Wayne No. 18AP0019, 2018-Ohio-4918, ¶ 11. The Ohio Rules of Appellate Procedure allow an appellate court to disregard an assignment of error if a party "fails to argue the assignment separately in [his] brief * * *." App.R. 12(A)(2).

"Nonetheless, we exercise our discretion to consider the merits of [Mr. Smerglia's] combined assignment of error." *State v. Walter*, 9th Dist. Wayne No. 20AP0020, 2022-Ohio-1982, ¶ 17.

Sufficiency of the Evidence

{¶8} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶9} Gross sexual imposition occurs when a person has sexual contact with another person who is not his spouse and "purposely compels the other person * * * to submit by force or threat of force." R.C. 2907.05(A)(1). "While sexual imposition has a corroboration requirement, *see* R.C. 2907.06(B), the State may prove gross sexual imposition based solely on a victim's testimony, *see State v. Jennings*, 9th Dist. Summit No. 22016, 2004-Ohio-5447, ¶ 15." *State v. Elek*, 9th Dist. Lorain No. 20CA011611, 2023-Ohio-41, ¶ 7.

{¶10} M.F. testified that she worked at Mr. Smerglia's country club for several years and came to know him through the club. On the night in question, she was bartending there alongside a friend. M.F. continued to bartend long after her friend's shift ended. She testified she did so because a club member told her the club had promised members the bar would remain open later than usual due to the club's golf tournament. That same club member told M.F. the club had promised members its male employees would be available to drive them home at the end of the

evening. M.F. was surprised when she heard that news, as the club's male employees had already left for the evening.

{¶11} M.F. testified that most club members were able to arrange rides home, but not Mr. Smerglia. M.F. learned his wife had been involved in a car accident on her way to the club. Additionally, Mr. Smerglia told M.F. he could not secure a ride through Uber or Lyft. Because Mr. Smerglia was intoxicated and did not have a ride home, M.F. offered to drive him. She testified several other club members also needed a ride, so she planned to return to the club after taking Mr. Smerglia home.

{¶12} Before M.F. and Mr. Smerglia left the club, another club member insisted on accompanying them on their ride. That club member (hereinafter "the backseat passenger") sat in the back of M.F.'s four-door car. Meanwhile, Mr. Smerglia chose to sit in the front passenger's seat, and M.F. sat in the driver's seat.

{¶13} M.F. estimated she had been driving for less than a mile when Mr. Smerglia placed his left hand between her legs. As he touched her thigh, pulled at her shorts, and tried moving her underwear to the side to touch her genitals, M.F. tried scooting away and crossing her legs. M.F. was cognizant of the fact that she had a tampon inserted and hoped it would hamper Mr. Smerglia if her efforts to deflect him failed. She recalled him trying to touch her vagina two to three times during the ride. Although she told him "no" at one point and shook her head, Mr. Smerglia only "stopped for a couple minutes and then started again."

{¶14} M.F. testified it took longer than it should have to drive Mr. Smerglia home because he kept giving her bad directions. When they finally arrived, the backseat passenger quickly exited the car to urinate in a nearby bush. Mr. Smerglia tried to kiss M.F. before exiting her car, but she told him, "No, stop." She testified the backseat passenger heard what she said and, when he

returned to the car, he asked her if something had happened. M.F. refused to share any details with him but asked him to keep anything he had seen or heard to himself. As soon as they returned to the club, however, the backseat passenger told other club members Mr. Smerglia had tried to kiss M.F. M.F. testified she never returned to the club after that evening because she was embarrassed.

{¶15} As part of its case-in-chief, the State introduced text messages M.F. exchanged with her bartending friend following the incident. In the messages, the friend advised M.F. that everyone at the club was aware what had happened. M.F. messaged her friend that she had told Mr. Smerglia "no" and "stop" but also froze up during the encounter. M.F. wrote, "it was so disgusting my tampon saved by f***ing life[.]"

{¶16} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded the State proved the elements of gross sexual imposition beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. M.F. testified Mr. Smerglia touched her thigh, pushed at her underwear, and tried penetrating her vagina more than once while she scooted away, crossed her legs, and told him no. "[I]n sex offense cases such as this, courts have consistently held that the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration." *Jennings*, 2004-Ohio-5447, at ¶ 15. *See also Elek*, 2023-Ohio-41, at ¶ 14 (issues related to an accuser's credibility "are not reviewable in the context of the sufficiency of the evidence"). M.F.'s testimony was evidence Mr. Smerglia purposely compelled her to have sexual contact with him through force. *See* R.C. 2907.05(A)(1). Because Mr. Smerglia has not shown the State set forth insufficient evidence to sustain his conviction, we reject his argument to the contrary.

Weight of the Evidence

{¶17} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶18} Mr. Smerglia argues his conviction is against the manifest weight of the evidence because M.F.'s version of the events was not credible. He argues her testimony about scooting away and crossing her legs while driving strains credulity, as doing so would have hampered her ability to drive the car. He notes the backseat passenger was present for the entire car ride and never observed any inappropriate behavior. He also notes M.F. never reported his alleged misconduct to the club or the police. Instead, she returned to the club that evening and drove other club members home. Mr. Smerglia argues the inconsistencies in her statements and the lack of any physical evidence against him support the conclusion the jury lost its way in convicting him.

{¶19} The backseat passenger testified he was a long-time club member and had known M.F. since she was a child. He decided to ride with her and Mr. Smerglia that evening because Mr. Smerglia did not live close by, and he thought M.F. would not want to drive back alone that late at night. Although he agreed the ride took longer than it should have, he could not recall the route they took to Mr. Smerglia's home. He agreed he was intoxicated and was not paying attention. According to the backseat passenger, he only recalled seeing Mr. Smerglia's left hand

on M.F.'s armrest and did not witness any inappropriate behavior. He also testified, however, that he "was kind of laying down in the back" during the ride.

{¶20} When they finally arrived at Mr. Smerglia's home, the backseat passenger testified, he got out of the car to urinate by some nearby bushes. He was still standing by the bushes when he heard M.F. say, "no." Upon returning to the car, he asked M.F. what had happened, and she said Mr. Smerglia had tried to kiss her. The backseat passenger could not remember if M.F. asked him to keep the incident quiet. He also could not remember for sure if he told others what had happened when they returned to the club but testified: "I want to say that I told them * * * that he tried to kiss her."

{¶21} The backseat passenger confirmed that M.F. never returned to the country club after the incident. Two days later, however, Mr. Smerglia pulled him aside at the club and asked what happened the night M.F. drove him home. When the backseat passenger shared M.F.'s statement about the kissing attempt, Mr. Smerglia appeared surprised. Shortly thereafter, Mr. Smerglia was asked to leave the club. The backseat passenger confirmed he later told police about the incident between M.F. and Mr. Smerglia while reporting a separate incident.

{¶22} M.F. acknowledged she never filed a police report. Instead, she spoke to the police about six days after the incident. She did so because an officer called her to follow up on information the police had received from the backseat passenger. M.F. explained that she originally had no intention of reporting the incident because she was embarrassed and simply wanted to move on with her life.

{¶23} Another club member testified he was present the evening M.F. gave Mr. Smerglia a ride home. He testified he had known M.F. for some time because she was in the same class as his daughter. When M.F. returned from taking Mr. Smerglia home, the club member stated, she

looked "clearly rattled," and it was evident something was wrong. M.F. initially refused to tell him what had happened, but relented after she took him home and he gave her a hug. M.F. told the club member Mr. Smerglia "tried to kiss her, put his hand in her lap, [and] tried to put his hand in her pants." The club member confirmed Mr. Smerglia was asked to leave the club within two days of the incident and never returned.

{¶24} Mr. Smerglia testified in his own defense and called several character witnesses. His daughter-in-law and one of his sons testified the allegations against him were wholly inconsistent with his character. The daughter-in-law knew M.F. because M.F. had briefly worked at her husband's chiropractic office. She described M.F. as an unreliable employee with financial problems. Meanwhile, the son said he spoke with Mr. Smerglia on the phone a few times before the alleged incident to discuss his mother's car accident and to let Mr. Smerglia know he would not be able to give him a ride home. According to the son, Mr. Smerglia never sounded noticeably intoxicated when they spoke on the phone.

{¶25} Mr. Smerglia agreed he drank alcohol the entire day leading up to the incident but denied he was intoxicated when M.F. drove him home. He stated that he ate three big meals that day, as well as snacks, and paced himself with water. When his wife had a car accident and he was unable to arrange for alternative transportation, he accepted a ride home from M.F. He testified M.F. took several wrong turns along the drive and their progress was hampered by detours and road construction. He believed he fell asleep at some point during the ride but denied passing out due to intoxication. He also denied ever touching M.F. inappropriately. Mr. Smerglia confirmed that, when they arrived at his house, the backseat passenger left the car to urinate outside. Meanwhile, Mr. Smerglia thanked M.F. for the ride, exited the car, and went into his

house through his garage. He denied that he ever tried to kiss M.F. or heard her say "no" when he got out of her car.

{¶26} Mr. Smerglia played golf at the club the following day. He testified someone pulled him aside at the end of the day and asked him what had happened between him and M.F. the previous evening. Mr. Smerglia indicated he had no idea what the man was talking about, so he tracked down the backseat passenger and asked him what was being said. According to Mr. Smerglia, he was stunned by the accusations against him. He was equally stunned when he later received a letter from an attorney who claimed to represent M.F. It was the defense's theory that M.F. fabricated allegations against Mr. Smerglia so she could bring a civil suit against him for money. M.F. repeatedly testified, however, that she had no intention of suing Mr. Smerglia. She also denied having financial problems. She testified that she only worked at his son's chiropractic office for a few months because her father had a serious accident and she ultimately had to quit to become his full-time caretaker until he passed away.

{¶27} Having reviewed the record, this Court cannot conclude the jury clearly lost its way and created a manifest miscarriage of justice when it found Mr. Smerglia guilty of gross sexual imposition. *See Otten*, 33 Ohio App.3d at 340. The jury was essentially presented with two conflicting versions of the events. While Mr. Smerglia claimed he never touched M.F. inappropriately, M.F. described how he repeatedly tried to move her underwear to the side and touch her genitals. She also described how he tried to kiss her before exiting her car. The backseat passenger confirmed that he heard M.F. say "no" while he was standing a short distance from the car. Further, a different club member testified M.F. was "clearly rattled" when she returned to the club and soon confided what Mr. Smerglia had done to her during the ride. As the trier of fact, the jury was in the best possession to assess M.F.'s credibility and decide whether she was telling the

truth. *See State v. Brown*, 9th Dist. Lorain No. 20CA011618, 2021-Ohio-2540, ¶ 48. "A verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Because Mr. Smerglia has not shown this is the exceptional case where the evidence weighs heavily against his conviction, we reject his argument to the contrary. *See Otten* at 340. Thus, his first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING APPELLANT, DALE SMERGLIA, CRIM.R. 29 MOTION AS THE STATE FAILED TO MEET THE BURDEN OF PRODUCTION FOR THE CHARGE OF ATTEMPTED RAPE.

{¶28} In his second assignment of error, Mr. Smerglia argues the trial court erred when it denied his Crim.R. 29(A) motion. Specifically, he argues the State failed to establish jurisdiction or set forth sufficient evidence to support a charge of attempted rape. This Court rejects his arguments.

{¶29} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37. As such, we incorporate by reference the sufficiency standard outlined in our discussion of Mr. Smerglia's first assignment of error.

{¶30} Regarding jurisdiction, Mr. Smerglia argues the State failed to establish where his alleged offense occurred. He notes that M.F. did not recall the exact route they drove and described driving through multiple cities and at least two counties. Because very little of their trip occurred in Medina County, Mr. Smerglia argues, the trial court should have dismissed his charge for lack of jurisdiction.

**{¶31}** While Mr. Smerglia phrases his argument in terms of jurisdiction, jurisdiction over indicted criminal matters rests soundly in the court of common pleas. *See State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, ¶ 25. The essence of Mr. Smerglia's argument is that the State failed to prove venue. *See State v. Headley*, 6 Ohio St.3d 475, 477 (1983) (venue must be proven in all criminal prosecutions). "When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred." R.C. 2901.12(H). "R.C. 2901.12(H) provides a sensible, efficient approach to justice by permitting one court to hear a matter which has roots in several court jurisdictions." *State v. Brown*, 9th Dist. Summit No. 25287, 2011-Ohio-1041, ¶ 39, quoting *State v. Lydicowens*, 9th Dist. Summit No. 14054, 1989 WL 140617, *6 (Nov. 22, 1989).

**{¶32}** M.F. testified she had driven less than a mile from the country club in Medina when Mr. Smerglia placed his hand on her thigh. She also gave the name of the road she was driving on at the time. The trial court found Mr. Smerglia's alleged misconduct began in Medina County, so it denied that aspect of his motion for acquittal. Mr. Smerglia has not addressed R.C. 2901.12(H) or the trial court's finding that his alleged misconduct began in Medina County. This Court will not construct an argument on his behalf. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). The State's evidence, if believed, showed Mr. Smerglia engaged in a course of criminal conduct that began in Medina County. Thus, the State set forth sufficient evidence of venue, and the trial court did not err by overruling that aspect of Mr. Smerglia's Crim.R. 29(A) motion.

**{¶33}** Next, Mr. Smerglia argues the trial court erred when it denied his Crim.R. 29(A) motion as to his attempted rape charge. According to Mr. Smerglia, the State produced insufficient

evidence to support that charge.  Even assuming the trial court erred by denying that aspect of Mr. Smerglia's motion, however, the record reflects its error was harmless.  *See* Crim.R. 52(A) (courts shall disregard any errors not affecting substantial rights).  The jury acquitted Mr. Smerglia of attempted rape, so that charge did not result in a conviction.  *See State v. Kelley*, 9th Dist. Lorain No. 06CA008967, 2008-Ohio-1458, ¶ 38; *State v. Rader*, 9th Dist. Lorain No. 93CA005593, 1994 WL 45786, *1 (Feb. 9, 1994) (failure to grant Crim.R. 29 motion harmless where jury did not convict on that offense).  The jury only found Mr. Smerglia guilty of gross sexual imposition, and the State set forth sufficient evidence in support of that offense.  *See* Discussion of Assignment of Error I, *supra*.  Upon review, Mr. Smerglia has not shown reversible error occurred when the trial court denied his Crim.R. 29(A) motion.  Accordingly, his second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

> APPELLANT, DALE SMERGLIA, WAS DENIED HIS RIGHT TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE.

{¶34} In his third assignment of error, Mr. Smerglia argues he received ineffective assistance of counsel.  For the following reasons, we reject his argument.

{¶35} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62.  To prevail on a claim of ineffective assistance of counsel, Mr. Smerglia must establish: (1) his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A deficient performance is one that falls below an objective standard of reasonable representation.  *State v. Bradley*, 42 Ohio St.3d 136 (1989),

paragraph two of the syllabus. To establish prejudice, Mr. Smerglia must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

{¶36} Mr. Smerglia argues he received ineffective assistance of counsel because his attorney did not call various witnesses to testify on his behalf. According to Mr. Smerglia, his attorney should have called witnesses to "establish a substantial time-line for the offense[,]" and to testify about an internal investigation the country club conducted. Further, he argues his attorney should have called a prohibited witness to make a proffer. According to Mr. Smerglia, the proffer would have shown M.F. previously made false accusations against the prohibited witness. Mr. Smerglia argues his counsel's errors deprived him of his right to effective assistance of counsel.

{¶37} Upon review, this Court rejects Mr. Smerglia's ineffective assistance of counsel argument for three reasons. First, "[c]ounsel's decision to call a witness is a matter of trial strategy. Such decisions will generally not be second-guessed by a reviewing court." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 113. Second, "speculation is insufficient to establish ineffective assistance." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 217. Mr. Smerglia essentially asks this Court to assume each witness his counsel did not call would have offered testimony favorable to him. There is no guarantee, however, that testimony would have aided his defense. Third, and relatedly, Mr. Smerglia has not shown that, but for his counsel's alleged error to call additional witnesses, the outcome of the proceedings would have been different. *See Sowell* at ¶ 138. It is unclear how a more definitive timeline or information about a club investigation would have aided the defense, as Mr. Smerglia's alleged misconduct only occurred in the presence of Mr. Smerglia, M.F., and the backseat passenger. The jury was in the best position to judge their

respective credibility. Further, it is unclear how a proffer from the prohibited witness would have led the trial court to admit his testimony. The record reflects defense counsel told the trial court what the prohibited witness would say if he testified. The trial court refused to allow the witness to testify because (1) his testimony would neither prove nor disprove the current allegations, and (2) the fact that the prohibited witness might claim M.F. falsely accused him did not necessarily mean her accusations against him were false. The trial court refused to allow the prohibited witness to testify because it did not want to try a case within a case. Mr. Smerglia has not explained how the court's ruling would have changed if defense counsel had introduced a proffer directly from the prohibited witness rather than summarizing his testimony. Because Mr. Smerglia has not established a claim of ineffective assistance of counsel, his third assignment of error is overruled.

III.

{¶38} Mr. Smerglia's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

KIMBERLY STOUT-SHERRER, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.