[Cite as *State v. Groh*, 2025-Ohio-1497.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

MICHAEL S. GROH,

    DEFENDANT-APPELLANT.

CASE NO. 4-24-21


OPINION AND
JUDGMENT ENTRY


**Appeal from Defiance County Common Pleas Court**
**Trial Court No. 23 CR 15116**

**Judgment Affirmed**

**Date of Decision: April 28, 2025**


APPEARANCES:

    *Henry Schaefer* **for Appellant**

    *Russell R. Herman* **for Appellee**

**MILLER, J.**

{¶1} Defendant-Appellant, Michael Groh ("Groh"), appeals from the June 26, 2024 judgment of the Defiance County Court of Common Pleas sentencing him on ten convictions for gross sexual imposition. Groh argues his convictions were without sufficient evidence, were against the manifest weight of the evidence, and violated his due process rights. He also argues the trial court erred in ordering the sentences for the ten convictions to be served consecutively. For the reasons that follow, we affirm.

## I.    FACTS AND PROCEDURAL HISTORY

{¶2} On June 15, 2023, the Defiance County Grand Jury indicted Groh on ten counts of gross sexual imposition ("GSI"), in violation of R.C. 2907.05(A)(4), (C)(2). Each of the ten counts charged the date of offense to be "[o]n or about October 1, 2014 through September 30, 2015." There is no indication in the record that Groh ever requested a bill of particulars. Groh also acknowledges that he did not object to any potential defect in the indictment prior to trial.

### A.    Trial

{¶3} The trial took place on April 29 and 30, 2024. The alleged victim was S.S, who was born in October 2004. S.S. testified that the alleged incidents of GSI took place when she was ten years old. At the time, S.S. and her mother, brother, and one sister had moved into a house where Groh, another one of S.S.'s sisters

(who at the time was dating Groh), and that sister's two daughters were living. At trial, S.S. recalled that she lived there for a quarter of her fourth grade school year, or approximately three months, before moving out. Groh was "very much a father figure" to S.S. at the time. (Trial Tr. at 212).

{¶4} According to S.S., during that time period, she would sometimes sit on Groh's lap while Groh sat in a chair in the living room. Groh would slide his hand into whatever she was wearing and touch her "private parts" with his hand, skin-to-skin. Although there was no penetration, Groh would rub her "private parts." She testified that these incidents did not take place every day, but they happened "[a]t least a dozen times" while living at the house with Groh. (*Id.* at 211, 215, 222-223). At the time, she did not understand the sexuality of Groh's actions and she did not disclose them to anyone. S.S. testified that there was always someone around when these incidents took place, but could not explain how no one observed them.

{¶5} S.S. also testified that she started working at a restaurant in February 2023. She had not seen Groh since moving out of the house approximately nine years earlier. One day while working at the restaurant, she saw Groh, which "sent [her] into a panic . . . [b]ecause he hurt [her] as a child." (*Id.* at 204).

{¶6} Among the other witnesses who testified for the State were two managers of the restaurant who were working there on the day referenced by S.S. One of the managers testified that, when S.S. saw Groh, S.S. started "crying, trembling, just pretty much fell apart," so that manager took her to the back of the

restaurant to settle her down. (*Id.* at 145). However, S.S. was inconsolable and could not finish her shift. Someone had to pick up S.S. from the restaurant and take her home because "she was such a mess" that she could not drive. (*Id.*). The other manager testified that she spoke with S.S. outdoors after S.S. saw Groh. S.S. was shaking, crying, and having trouble breathing. The manager had never seen S.S. in a state like that before. S.S. told her that Groh had molested her when she was younger.

{¶7} S.S.'s mother testified that Groh "always insisted that the girls sit in his lap in his big rocking chair, and he would throw a blanket over their laps, and they would always giggle the whole time they were in his chair. We thought he was just tickling them." (*Id.* at 183). She clarified that "the girls" were S.S. and the two daughters of S.S.'s sister who was then dating Groh. S.S.'s mother did not find it odd at the time for the girls to sit on Groh's lap because he had a father-figure role with them. S.S.'s mother had difficulty remembering how long they lived in the house with Groh, but it was potentially during one school year and she did not think it was for a full year.

{¶8} One of S.S.'s older sisters (who did not date Groh) testified that she would see S.S. sitting on Groh's lap, "a lot of times with a blanket," but never saw Groh touch S.S. sexually. (*Id.* at 167). The sister testified that, around two years after the alleged incidents occurred, S.S. told her that that Groh had touched her inappropriately while she sat on his lap. The sister did not tell anyone about this

discussion; she could tell at the time that S.S. was very anxious about it, so they just talked about it between themselves.

{¶9} Finally, Groh testified in his own defense. He acknowledged that S.S. had lived with him and, according to Groh, she was there for about a year, although it might not have been a full school year or a full twelve months. He also acknowledged that he was a father figure to S.S. and the other children at the time and that S.S. would sit on his lap. Groh testified there were always other people in the house when S.S. would sit on his lap, he "always put the blanket on" her and any of the other girls who would sit on his lap, and he always kept his hands out and on top of the blanket. (*Id.* at 236-237, 245). Groh denied ever having any sexual thoughts about any child or inappropriately touching any child.

{¶10} After deliberations, the jury returned guilty verdicts on all ten counts, and the trial court continued the matter for sentencing.

### B. Sentencing

{¶11} The trial court sentenced Groh to a term of 24 months imprisonment for each of the ten counts and decided that those terms should be served consecutively, for a total aggregate term of 20 years in prison. During the sentencing hearing, the trial court heard a statement made by S.S., highlighted Groh's "fairly extensive criminal history going back decades," and noted Groh's own statements that he had provided to the court. (June 17, 2024 Tr. at 7). The trial court said,

Per the pre-sentence investigation writer, . . . you continued to refuse to accept any responsibility for your conduct. I do benefit, obviously, in this matter of having been at the trial and heard the testimony, and I think it's clear that you did exactly what you were charged with doing. The young lady was extremely credible. You taking the stand in your own defense, were absolutely not.

The disturbing part is the ongoing pattern of your behavior where you continue to trade on the interfamilial situation and the trust that this young girl had in you to be able to continue to commit those acts. And that's what makes it particularly distressing and it's particularly distressing that you continue in the face of the evidence to refuse to respect – accept any responsibility for your conduct.

. . . [T]he impact of these crimes on [S.S.] – it's hard to overstate that, it's horrendous.

Taking into account the [legislature's] judgment that this conduct amounts to a Third-Degree Felony and the range for Third-Degree Felony, the Court does acknowledge it's not the most egregious form of the offense. I don't think the maximum terms are appropriate as far as it relates to each individual offense. I do believe based on your prior criminal history, your absolute lack of any remorse or willingness to take any responsibility, that you are a substantial danger to the public and that consecutive terms need to be imposed in this matter so as not to demean the seriousness of your conduct and adequately protect the public. I don't believe based on your pattern of behavior and the time period that you undertook that behavior that any single term is sufficient to adequately punish your behavior.

. . .

As I said consecutive terms are clearly necessary here warranted by the fact that no individual term would adequately punish your behavior. The substantial harm suffered by this victim, and the ongoing pattern of your behavior and efforts to conceal it, your continued unwillingness to take any responsibility for your conduct, so these consecutive terms are necessary. . . .

(*Id.* at 7-10).

**{¶12}** In its judgment entry, the trial court stated it had considered, among other things, the recommendations from the State, the victim's statements, defense counsel's statements in mitigation of punishment, the pre-sentence investigation report, Groh's criminal history, and the factors under R.C. 2929.12. It explained that "[c]onsecutive terms are necessary to adequately protect the public and are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and the offender's criminal history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crimes." (June 26, 2024 Judgment Entry at 2).

**{¶13}** This appeal followed.

## II.    ASSIGNMENTS OF ERROR

Groh raises three assignments of error for our review:

### First Assignment of Error

**The convictions are against the manifest weight of the evidence and there was not sufficient evidence to maintain the convictions.**

### Second Assignment of Error

**Ordering the sentences to be served consecutively is contrary to law.**

### Third Assignment of Error

**The convictions violate the due process clause of the Fourteenth Amendment.**

## III.  DISCUSSION

{¶14} We address the assignments of error out of order in a manner that facilitates our analysis.

### A.  First Assignment of Error

{¶15} In the first assignment of error, Groh argues both that there was insufficient evidence to support the convictions and that the convictions were against the manifest weight of the evidence.

### 1.  Standards of Review

{¶16} Whether the evidence is legally sufficient to sustain a verdict is a question of law.  *State v. Dent*, 2020-Ohio-6670, ¶ 15.  Thus, our review of that issue is de novo.  *Id.*  A sufficiency challenge disputes whether a party met its burden of production at trial.  *State v. Messenger*, 2022-Ohio-4562, ¶ 26.  "In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."  *Dent* at ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  Thus, "[i]n assessing the sufficiency of the evidence, we do not resolve evidentiary conflicts or assess the credibility of witnesses."  *State v. Jackson*, 2023-Ohio-2193, ¶ 26 (3d Dist.); *see also Jenks* at 279.

{¶17} On the other hand, the "manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion."  *Messenger* at ¶ 26.  "[W]e

review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 2018-Ohio-1562, ¶ 168. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting" evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Yet, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119. To reverse a judgment from a jury trial on the weight of the evidence, all three appellate judges must concur. Ohio Const., art. IV, § 3(B)(3).

### 2. Applicable Law

{¶18} The statute for gross sexual imposition provides, in relevant part, "No person shall have sexual contact with another . . . when . . . [t]he other person . . . is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.05(A)(4). The term "sexual contact" "means any touching of an erogenous zone of another, including without limitation the thigh, genitals,

buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

### 3. Analysis

#### a. Sufficiency of the evidence

{¶19} In his brief, Groh concedes that S.S.'s testimony alone is sufficient to establish the elements for GSI.[1] Instead, to support his sufficiency argument, Groh argues the evidence was insufficient to support the *number* of convictions. According to Groh, S.S.'s testimony only supported three convictions, and the remainder must be vacated due to insufficient evidence. We disagree. S.S. testified that the incidents of GSI happened "[a]t least a dozen times" throughout the period of time that she lived with Groh. (Trial Tr. at 211, 215, 222-223).

{¶20} In further support of his contention that the evidence was insufficient to support the number of convictions, Groh points out that the witnesses could not agree on how long S.S. lived with Groh, varying between approximately three months to approximately a year. Although he acknowledges S.S.'s testimony that the incidents of GSI occurred "[a]t least a dozen times" while she lived with Groh, Groh asserts that "the charges against [him] were structured to have one allegation per month during a ten-month period." (Appellant's Brief at 9). This assertion is incorrect. The time frame alleged in the indictment for the offenses was a 12-month

---

[1] We agree with Groh's concession. *E.g., State v. Lewis*, 2020-Ohio-6894, ¶ 17, 21 (3d Dist.) (alleged child-victim's testimony, by itself, provided sufficient evidence to support GSI convictions).

period, correlating with the time S.S. was ten years old, and each of the offenses were alleged to have occurred at some point during that 12-month period. We find that the evidence presented allowed a rational trier of fact to find each offense occurred within the time frame alleged in the indictment and also find the essential elements for each of the GSI offenses beyond a reasonable doubt, when viewed in a light most favorable to the prosecution. *E.g., State v. Wolfe*, 2024-Ohio-4861, ¶ 35-36 (3d Dist.) (attempted GSI conviction was based on sufficient evidence where the jury could infer the offense occurred reasonably within the time frame alleged in the indictment).

### b. Manifest weight of the evidence

{¶21} To support his manifest-weight-of-the-evidence argument, Groh contends this is a he-said-she-said case without any eye witness corroboration or physical evidence. He claims S.S.'s version is incredible because others would have been present in the room at the time of the offenses—and those others who testified at trial said they did not see anything inappropriate.

{¶22} We are not persuaded. Testimony from witnesses for the State—and Groh himself—indicated that the offenses would have taken place underneath a blanket and were perpetrated on a child. *E.g.*, *State v. Smerglia*, 2023-Ohio-1610, ¶ 18-19 (9th Dist.) (conviction for gross sexual imposition was not against manifest weight of the evidence, despite the fact the offense occurred in the front seat of a car with a backseat passenger who testified he did not witness any inappropriate

behavior).  Additionally, S.S. testified that she did not understand the sexual nature of Groh's actions at the time.  Moreover, direct corroboration of S.S.'s allegations by other witnesses was not required for the jury to find Groh guilty.  *State v. Lewis*, 2020-Ohio-6894, ¶ 48 (3d Dist.).  Even setting aside the testimony of S.S.'s sister and the restaurant managers, which tended to validate S.S.'s version of events, a conviction is not against the manifest weight of the evidence simply because the fact-finder chose to believe one version of events over another.  *Smerglia* at ¶ 18, 25-27; *State v. Peacock*, 2017-Ohio-2592, ¶ 41 (3d Dist.).  Finally, in addition to the fact it was unlikely physical evidence would have been available at trial due to the type of offense and separation in time of nearly a decade between the offenses and investigation, physical evidence is not necessary to sustain the conviction. *Lewis* at ¶ 50.

{¶23} Ultimately, after reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we do not find the jury clearly lost its way and created a manifest miscarriage of justice in resolving conflicts in the evidence.  This is not an exceptional case where the evidence weighed heavily against the convictions and must be overturned as being against the manifest weight of the evidence.  *Id.* at ¶ 57, 63.

{¶24} Groh's first assignment of error is overruled.

### B.     Third Assignment of Error

{¶25} In the third assignment of error, Groh claims a due process violation because the indictment did not indicate a specific date and time for each offense, which hampered his ability to prepare for trial because he allegedly "was not put on notice as to the range of possible windows of time for which he was in jeopardy." (Appellant's Brief at 13).

#### 1.     Applicable Law

{¶26} "[E]very defendant has a due process right to notice of the specific charge." *State v. Noling*, 2002-Ohio-7044, ¶ 60. "An individual accused of a felony is entitled to an indictment setting forth the 'nature and cause of the accusation' pursuant to Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution." *State v. Sellards*, 17 Ohio St.3d 169, 170 (1985).

{¶27} An indictment is not made invalid for stating the time of the offense imperfectly. *Id.* at 171, citing R.C. 2941.08(C). It has long been the law that, "[i]n a criminal charge[,] the exact date and time are immaterial unless in the nature of the offense exactness of time is essential. It is sufficient to prove the alleged offense at or about the time charged." *Tesca v. State*, 108 Ohio St. 287 (1923), paragraph one of the syllabus. "Ordinarily, precise times and dates are not essential elements of offenses." *Sellards* at 171. "Thus, the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges." *Id.* We note that sometimes the precise time and date of an alleged offense cannot be determined

with specificity, particularly in cases involving sexual misconduct with a child. *Lewis*, 2020-Ohio-6894, at ¶ 51-53 (3d Dist.); *State v. Mundy*, 99 Ohio App.3d 275, 296 (2d Dist. 1994).

{¶28} However, "[a]n accused is not foreclosed from securing specificity of detail" through a request for a bill of particulars. *Sellards* at 171; *see also State v. Haynes*, 2022-Ohio-4473, ¶ 19-23, 26, 28 (discussing the State's obligations in providing a bill of particulars upon request). "[T]he state must, in response to a bill of particulars or demand for discovery, supply specific dates and times with regard to an alleged offense where it possesses such information." *Sellards* at syllabus. Further, even where the state is unable to provide times and dates more specific than those found in the indictment, there are some instances where dates and times are essential and the failure to provide more specific dates and times may prejudice the accused and prove fatal to prosecution of the charged offense. *See id.* at 171-172; *Mundy* at 296 (where an accused requests a bill of particulars, failure to provide a specific date for an alleged offense may "be fatal to the prosecution if it results in material detriment to the accused's ability to fairly defend himself"—even if the State is unable to supply more specifics because it does not possess such information). Two such possible instances would be where the accused asserts an alibi or where the victim's age is an element of the crime charged and the victim's age bordered on the age required to make the conduct criminal. *Sellers* at 171-172;

-14-

*State v. Birt*, 2013-Ohio-1379, ¶ 32 (12th Dist.) (in those two instances, the failure to provide a specific date of the offense is more likely to prejudice the accused).

### 2. Analysis

**{¶29}** As noted above, each of the ten counts in the indictment charged the date of offense to be "[o]n or about October 1, 2014 through September 30, 2015." Groh argues that, "if this court holds that the indictments represent any 10 events throughout the entirety of the time period," then he "was deprived of his ability to properly defend against the charges." (Appellant's Brief at 13). Groh acknowledges both that he did not object to any alleged defect in the indictment and that the State was not intentionally keeping information from him. He also acknowledges the lack of specificity was merely a result of the witnesses suffering from poor memories of long past events. (*Id.* at 13-14). We also note that Groh did not request a bill of particulars.

**{¶30}** Groh claims he "would not have known that the State would present contradictory evidence as to when these events occurred." (*Id.*). We disagree with the underlying premise of this claim. Although the testimony from all witnesses did not align regarding exactly how long S.S. lived in Groh's house, the State's witnesses did not present contradictory evidence as to when the offenses took place. S.S. testified that the touching took place when she was approximately ten years old, while in the fourth grade, during the time period she lived in a house with Groh—which she recalled was approximately three months long. Groh does not

contend that time period was outside of the time frame set forth in the indictment. Rather, Groh claims that he "was not on notice as to the range of possible windows of time for which he was in jeopardy." (*Id.* at 13). Groh further claims his ability to prepare for trial was materially hampered by this alleged lack of notice.

**{¶31}** We disagree with Groh's claims. Importantly, he does not explain how he was "materially hampered" by the general date range in the indictment. *Mundy*, 99 Ohio App.3d at 296-297 (2d Dist.) (even though defendant requested a bill of particulars, the reviewing court rejected defendant's conclusory argument that the State's inability to supply more specific dates and times resulted in material detriment to his ability to defend himself). We find no basis for this general claim that he was prejudiced. *See Lewis*, 2020-Ohio-6894, at ¶ 51-53 (3d Dist.) (rejecting defendant's argument concerning the lack of specific dates for the GSI incidents); *Birt*, 2013-Ohio-1379, at ¶ 32 (12th Dist.). There was no dispute that S.S. was well under the age of 13 at the time of the offenses, and Groh's defense was that the acts never took place—not that he was elsewhere during each of the ten alleged incidents. *See Lewis*, 2020-Ohio-6894, at ¶ 51 (3d Dist.); *Mundy*, 99 Ohio App.3d at 296-297 (2d Dist.) (State's failure to provide more specific date and time for the charged GSI, despite defendant's request for a bill of particulars, did not deprive defendant of a fair trial or due process of law where defendant claimed the inappropriate touching never happened); *Sellards*, 17 Ohio St.3d at 172 (even when the defendant requests a bill of particulars, "where the inability to produce a specific

time or date when the criminal conduct occurred is . . . without material detriment to the preparation of a defense, the omission is without prejudice, and without constitutional consequence"). Therefore, we reject Groh's arguments in support of this assignment of error.

{¶32} Groh's third assignment of error is overruled.

### C.      Second Assignment of Error

{¶33} In the second assignment of error, Groh argues that the trial court's decision to run the sentences for each count consecutively was contrary to law.

### 1.      Standard of Review and Applicable Law

{¶34} R.C. 2953.08 "defines the parameters and standards—including the standard of review—for felony-sentencing appeals." *State v. Marcum*, 2016-Ohio-1002, ¶ 21. "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statues [identified in R.C. 2953.08(G)(2)(a)] or that the sentence is otherwise contrary to law." *Id.* at ¶ 1; *see also* R.C. 2953.08(G).    One of the relevant statutes identified in R.C. 2953.08(G)(2)(a) is R.C. 2929.14(C)(4) concerning consecutive sentencing. *See also State v. Gwynne*, 2023-Ohio-3851, ¶ 13-15, 24 (pursuant to R.C. 2953.08(G)(2)(a), an appellate court may only "modify or vacate consecutive sentences if it clearly and convincingly finds that the record does not support the trial court's consecutive-sentence findings").

'Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'

*Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶35}** There is a statutory presumption in favor of concurrent sentences. R.C. 2929.41(A); *see also State v. Bonnell*, 2014-Ohio-3177, ¶ 23. An exception is found in R.C. 2929.14(C), the consecutive-sentencing statute, which "requires the trial court to make statutory findings prior to imposing consecutive sentences." *Bonnell* at ¶ 26. "Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies." *State v. Elliston*, 2014-Ohio-5628, ¶ 12 (3d Dist.). The statute states, in relevant part:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following: . . . (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(c).

**{¶36}** "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *Bonnell* at ¶ 37. "Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.*

### 2. Analysis

**{¶37}** Groh argues that the trial court's finding that the sentences would not be disproportionate to the offense committed was contradicted by the trial court's own findings and, therefore, the consecutive sentences are contrary to law.[2] To support this argument, Groh relies on certain statements by the trial court during the sentencing hearing: "[T]he Court does acknowledge it's not the most egregious form of the offense. I don't think the maximum terms are appropriate as far as it relates to each individual offense." (June 17, 2024 Tr. at 9). More specifically, Groh contends "[i]t is inconsistent to conclude that the sentence should not be for the maximum term but then to impose a sentence that is far beyond the maximum term" by means of consecutive sentencing. (Appellant's Brief at 12). Thus, under Groh's logic, a trial court cannot impose less than a maximum sentence on individual counts

---

[2] Groh does not argue that the trial court failed to consider the principles of felony sentencing or the sentencing factors, and he does not dispute that he was sentenced within the statutory range for the offenses.

but then run those sentences consecutively such that the aggregate prison term exceeds the maximum potential prison term for a single count. We disagree.

**{¶38}** The Eighth District Court of Appeals has addressed, and rejected, Groh's argument:

> [Appellant] argues that because the trial court did not impose a maximum sentence, the record cannot support consecutive sentence findings. However, the law does not require the court to impose maximum sentences in order to impose the sentences consecutively. And in fact, the court's duty to provide a sentence reasonably calculated to protect the public from future crime by the offender and to punish the offender using the minimum sanctions that the court determines will accomplish those purposes (along with seriousness and recidivism factors) is separate and apart from the court's duty to make findings when considering whether consecutive sentences are warranted. Thus, the trial court engages in different analyses. It is therefore entirely possible in this case that the trial court found that [appellant] did not pose the greatest likelihood to re-offend, and therefore did not impose a maximum sentence, while still finding that a single term of three years did not adequately reflect the seriousness of [appellant's] conduct or adequately protect the public, and therefore impose consecutive sentences.
>
> Trial courts have broad discretion in fashioning the appropriate felony sentence. *State v. Long*, 138 Ohio St.3d 478, 2014–Ohio–849, 8 N.E.3d 890, ¶ 36 . . . . This discretion includes finding that maximum sentences are not necessary, while also finding that consecutive sentences are warranted.
>
> Accordingly, given the trial court's discretion in fashioning a felony sentence and this court's limited review of a trial court's sentence, we find that the trial court's failure to impose maximum sentences did not preclude the trial court's imposition of consecutive sentences.

*State v. Anderson*, 2017-Ohio-4186, ¶ 16-18 (8th Dist.). We agree with the Eighth District's assessment and conclusion and, therefore, reject Groh's argument. *See also State v. Pryor*, 2017-Ohio-8935, ¶ 61-63 (3d Dist.) (rejecting argument by

defendant that a trial court cannot sentence an offender to consecutive sentences if the resulting combined sentence amounts to less than the maximum allowable prison term for one of the counts). Ultimately, we do not determine, by clear and convincing evidence, that the record does not support the trial court's findings under R.C. 2929.14(C)(4) or that the sentence is otherwise contrary to law. *Marcum*, 2016-Ohio-1002, at ¶ 1; R.C. 2953.08(G).

**{¶39}** Groh's second assignment of error is overruled.

## IV. CONCLUSION

**{¶40}** For the foregoing reasons, Groh's assignments of error are overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Defiance County Court of Common Pleas.

*Judgment Affirmed*

**ZIMMERMAN and WILLAMOWSKI, J.J., concur.**

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.   The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.


_____
Mark C. Miller, Judge


_____
William R. Zimmerman, Judge


_____
John R. Willamowski, Judge

DATED:
/jlm

-22-